796 F.2d 1126
 In re FINANCIAL CORPORATION OF AMERICA SHAREHOLDER LITIGATION.
Sam ELIAS, C.M. Glassman, Edwin Margolius, Ruth Stepak, and
Irving Fishman, Plaintiffs/Appellants,
v.
ARTHUR ANDERSEN & CO., Defendant/Appellee.
 No. 85-6376.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1986.
Decided Aug. 11, 1986.
 
 Carole Broderick, Haverford, Pa., for plaintiffs-appellants.
 Stuart L. Kadison, Lee L. Blackman, Sandra J. Bergmann, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, FARRIS, and CANBY, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Shareholders of Financial Corporation of America appeal the district court's dismissal of this derivative suit against the corporation's auditor, Arthur Andersen & Co., to recover damages for an alleged violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78j(b)) and the SEC's Rule 10b-5 (17 C.F.R. Sec. 740.10b-5). The shareholders allege that "but for" Andersen's advice, the corporation would not have purchased certain securities, the purchase of which necessitated reporting certain losses, which allegedly caused massive withdrawals of capital by investors resulting in substantial loss to the shareholders.
 
 
 2
 The district court dismissed the complaint for lack of subject matter jurisdiction after determining that Andersen's alleged misrepresentations were not "in connection with" the purchase of securities within the meaning of Section 10(b). Because we find the advice given by Andersen did not "touch" the purchase or sale of securities, we affirm the district court's dismissal for failure to state a claim. Section 10(b) and Rule 10b-5 were not designed to reach the factual situation in issue.
 
 STANDARD OF REVIEW
 
 3
 We review a dismissal for failure to state a claim de novo. Guillory v. County of Orange, 731 F.2d 1379, 1381 (9th Cir.1984). Our review is limited, however, to the contents of the complaint. North Star International v. Arizona Corporation Commission, 20 F.2d 578, 581 (9th Cir.1983). To uphold a dismissal of this type, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. Halet v. Wend Investment Co., 672 F.2d 1305, 1309 (9th Cir.1982). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. North Star, 720 F.2d at 580. Applying these principles, we review the following facts:
 
 
 4
 The corporation is a financial services holding company. Andersen had been the corporation's independent auditor until it was replaced after the Federal Home Loan Bank Board assumed control of the corporation in 1984. In early 1984, with Andersen's assistance, the corporation's management undertook to generate substantial profits by speculating in interest rate fluctuations. Andersen made representations to the corporation "in connection with" the purchase of Government National Mortgage certificates. The corporation purchased Ginny Maes, and immediately resold them to the original holders subject to fixed coupon dollar reverse repurchase agreements. It engaged in these transactions with the hope that interest rates would fall and the value of the Ginny Maes would increase resulting in the desired profits at the repurchase date.[1] Gains or losses were recognized only after termination of the pertinent transaction and after the securities had been sold without an obligation to repurchase them. As a result, the interim changes in the value of Ginny Maes were not reported as gains or losses. Andersen advised and counseled the corporation to treat the transactions as financing transactions and to record the repurchase liability without recognizing any gain or loss resulting from the transfer. Because of Andersen's advice, the corporation purchased, sold, and agreed to repurchase in excess of $2 billion of Ginny Maes.
 
 
 5
 In mid-1984 the Securities and Exchange Commission announced that this accounting treatment was inappropriate. The corporation was required to account for the repurchase transactions as forward commitments, and to recognize profits or losses after they accrued on each transaction. The corporation was obliged to report a net loss of $107 million for the quarter ended June 30, 1984. A massive withdrawal of capital followed attributable to a decline in investor confidence because of the reported net loss.
 
 
 6
 Andersen knew or recklessly disregarded the fact that accounting for these transactions as financing transactions was wholly inappropriate, and was not based on any adopted accounting principles. But for Andersen's advice the corporation would neither have entered the transactions, nor have suffered the significant losses. Andersen is charged with responsibility for the corporation's losses in disposing of the Ginny Maes, and also for damages suffered because of the subsequent outflow of capital.
 
 
 7
 The issue is whether these alleged facts amount to a fraudulent scheme to defraud the corporation "in connection with" its purchases and sales of Ginny Maes.
 
 DISCUSSION
 Section 10(b) provides:
 
 8
 It shall be unlawful for any person ...
 
 
 9
 To use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 
 
 10
 15 U.S.C. Sec. 78j(b) (emphasis added). Rule 10b-5 provides:
 
 
 11
 It shall be unlawful for any person ...,
 
 
 12
 (a) To employ any device, scheme, or artifice to defraud,(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 
 
 13
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 
 
 14
 in connection with the purchase or sale of any security.
 
 
 15
 17 C.F.R. Sec. 240.10B-5 (emphasis added).
 
 
 16
 The district court found that the alleged fraud concerning the accounting treatment of the Ginny Mae transactions neither touched, nor was in connection with the purchase or sale of a security within the meaning of Section 10(b). The court reasoned that the advice given by Andersen did not, for example, go to the value of the Ginny Maes, or to the risks of purchasing them, but rather to how the corporation could account for the transactions in its financial statements and, therefore, the alleged fraud upon the shareholders of the corporation was not of the type the securities laws were intended to remedy.
 
 
 17
 The corporation cites Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), and numerous other cases[2] to argue that the phrase "in connection with" should be construed to encompass any fraud tangentially related to a securities transaction and to extend to any misrepresentation, however attenuated, that induces a purchase or sale of a security. See Bankers Life, 404 U.S. at 12, 92 S.Ct. at 168; see also Walling v. Beverly Enterprises, 476 F.2d 393 (9th Cir.1973) (not limited to investment value); Lanning v. Serwold, 474 F.2d 716, 719 (9th Cir.1973) (reject argument that fraud must affect value) (dictum). The corporation argues that Andersen's misrepresentation that the corporation need not report unrealized loss on its Ginny Mae transactions caused the corporation to believe that it would not experience capital outflow, liquidity problems, and worsened capital deficiency that resulted from being required to report such losses. It argues that the misrepresentation directly related to the economic consequences of a decline in the value of the security to the corporation, that Andersen misrepresented the risks involved and, therefore, that the misrepresentation is actionable under section 10(b).
 
 
 18
 The corporation's reasoning can be compared to the dissent in Palsgraf. See Palsgraf v. Long Island Railroad, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (N.Y.1928) (ripples in a pond) (Andrews, J. dissenting).[3] "The Supreme Court has said that section 10(b) is to be read flexibly." Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 651 F.2d 615, 619 (9th Cir.1981) (citing Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6 (1971)). To state a claim for relief under section 10(b), however, the plaintiff must set out facts to support, among other things, the requirement that the fraud was "in connection with" a securities transaction. This requires that a certain relationship be established between the fraud and the transaction that resulted in the injury complained of. If a securities transaction is "touched" by fraud, then section 10(b) provides a remedy. Arrington, 651 F.2d at 619. The touch test, however, is nothing more than a restatement of the "in connection with" test. See L. Loss, Fundamentals of Securities Regulation 903-04 (1983). One factor to be considered in determining whether the "in connection with" requirement has been met is whether a causal connection between the fraud and the transaction has been shown. Buffo v. Graddick, 742 F.2d 592, 596 (11th Cir.1984) (citing Ketchum v. Green, 557 F.2d 1022, 1025-30 (3d Cir.), cert. denied, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977)).[4] This "transactional nexus requirement is a species of causation [in fact]. Consistent with Sec. 10(b)'s 'in connection with' limitation on liability, it prohibits claims based on the extremely attenuated links between plaintiff's injury and defendant's conduct [as alleged]." Hudson v. Capital Management International, Inc., 565 F.Supp. 615, 622 (N.D.Cal.1983). The Second Circuit has held that "where the complaint alleges a broad-based scheme to defraud, the allegations of actual causation must be in the form of 'loss causation' and must assert that the 10(b) violations caused the claimed economic loss... This required causal connection may not be supplied by 'but for' allegations." Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 61 (2d Cir.1985); See also Bennett v. United States Trust Co., 770 F.2d 308, 313 (2d Cir.1985) (to recover, must show loss causation--that fraud caused economic harm, and transaction causation--fraud caused plaintiff to engage in transaction), cert. denied, --- U.S. ----, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Section 10(b) "impose[s] liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part." Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930, 943 (2d Cir.), cert. denied, --- U.S ----, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). See also Pross v. Katz, 784 F.2d 455, 459 (2d Cir.1986) (citing Chemical Bank ).
 
 
 19
 Andersen's allegedly fraudulent advice concerning the accounting treatment of Ginny Maes is not a fraud that touches, or is in connection with, the purchase or sale of a security. Andersen rendered advice on the manner in which the corporation could account for its repurchase agreements after purchasing and selling Ginny Maes. This advice had nothing to do with the intrinsic nature of the Ginny Maes, or with risks related to the method of their purchase or, indeed, to any factor reasonably linked to the purchase and to plaintiffs' ultimate loss. The advice merely related to the propriety of an accounting method to be adopted by the corporation of which plaintiffs were shareholders. While we have recognized that Sec. 10(b) is to be read flexibly, see Arrington v. Merrill Lynch, Pierce, Fenner & Smith, 651 F.2d 615, 619 (9th Cir.1981) (10(b) applies to misrepresentation of risks of buying on margin); Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir.1973) (10(b) applies to fraud in entering contract of sale of securities with no intent to perform), we have never gone so far as plaintiffs would take us here. Plaintiffs' loss resulted from a decline in the market for shares of the corporation, which in turn resulted from the SEC's requirement that security transactions of the corporation be accounted for in a manner different from that advised by Anderson. To apply Sec. 10(b) as a remedy for that loss would, in our view, extend the meaning of "in connection with" beyond that intended by Congress.
 
 
 20
 The corporation is not entitled to relief under any set of facts that could be proved. AFFIRMED.
 
 
 
 [1]
 Interest rates rose, however, and the corporation extended the repurchase dates in the hope that rates would ultimately fall
 
 
 [2]
 Herman & MacLean v. Huddleston, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (securities laws read liberally to effectuate remedial purposes); Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (failure to disclose dealer was market-maker); Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283 (9th Cir.1984) (failure to inform of risks in options trading); Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939 (3d Cir.) (failure to disclose margin interest rates), cert. denied, --- U.S. ----, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985); Costello v. Oppenheimer & Co., 711 F.2d 1361 (7th Cir.1983) (churning); Thompson v. Smith Barney, Harris Upham & Co., 709 F.2d 1413 (11th Cir.1983) (churning); McGrath v. Zenith Radio Corp., 651 F.2d 458 (7th Cir.) (false promise of employment induces tender of stock), cert. denied, 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981); Cramer v. General Telephone & Electronics Corp., 582 F.2d 259 (3d Cir.1978) (fraudulent commission payments essential part of sale), cert. denied, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); Chasins v. Smith, Barney & Co., 438 F.2d 1167 (2d Cir.1970) (failure to disclose market-maker)
 
 
 [3]
 "A boy throws a stone into a pond. The ripples spread. The water level rises. The history of that pond is altered to all eternity. It will be altered by other causes also.... Without each the future would not be the same. Each is proximate in the sense it is essential."
 Palsgraf, supra (emphasis added).
 
 
 [4]
 In discussing the "in connection requirement," the Third Circuit has set out factors to be considered by the courts in assuming a rigorous pretrial posture:
 (1) whether the transaction was in actuality little more than a dispute over internal corporate management, (2) the degree of proximity between the securities transaction and the claimed fraud, (3) whether there was a causal connection between the fraud and the securities transaction, and (4) whether the particular transaction is one appropriate for federal regulation.
 Buffo v. Graddick, 742 F.2d at 596. See Ketchum v. Green, 557 F.2d at 1025-30.