**Raizy LEVITIN, On Behalf of Herself and All Others Similarly Situated, Plaintiff,**

**v.**

**PAINEWEBBER, INC., Defendant.**

**No. 95 Civ. 6508 (DC).**

United States District Court, S.D. New York.

July 9, 1996.

Kaufman Malchman Kirby & Squire, LLP by Ira M. Press, Roger W. Kirby, New York City, Bernstein Liebhard & Lifshitz by Mel E. Lifshitz, New York City, for plaintiff.

Solomon, Zauderer, Ellenhorn, Frischer & Sharp by David E. Nachman, Richard T. Sharp, Emily Stern, New York City, for defendant.

## *OPINION*

CHIN, District Judge.

Raizy Levitin ("Levitin" or "plaintiff") brings this action on behalf of herself and all other persons who have conducted short sales through PaineWebber, Inc. ("Paine-Webber" or "defendant") since August 15, 1992 alleging that PaineWebber, by purportedly misappropriating funds that its customers provided as collateral, engaged in securities fraud. In addition to the federal securities fraud claims, plaintiff and the pu-

tative class assert various state law claims. Defendant moves to dismiss the complaint for failure to state a claim for securities fraud under section 10(b) of the Securities and Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b), and, if this claim is dismissed, to dismiss the remaining claims for lack of subject matter jurisdiction. Because the alleged fraud was not perpetrated "in connection with" the purchase or sale of securities within the meaning of the 1934 Act, PaineWebber's motion is granted.

### BACKGROUND [1]

In 1994, Levitin entered into a margin agreement with PaineWebber, a registered broker-dealer. Through her PaineWebber margin account, plaintiff engaged in short sales of securities. In the typical short sale, the customer sells stock that he or she does not own. The customer usually covers the sale with stock borrowed from the broker. If the customer is able to purchase the stock later at a lower price to repay the stock to the broker, the customer will earn a profit equal to the difference between the sale price and the purchase price.[2] To secure the loan of stock, the customer is required to provide the broker with collateral in the form of cash or securities.[3] The proceeds of the short sale, which are applied toward the margin requirement, remain in the customer's account until the sale is covered.

The broker obtains the stock that it loans to the customer from its own reserves or by borrowing it from other brokers or other customers, as permitted by standard margin agreements. When the broker borrows the stock from external sources, the broker must secure the loan with collateral worth at least 100% of the market value of the securities borrowed. Regulation T, 12 C.F.R. § 220.16. The funds used to secure the loan of stock may be taken directly or indirectly from the account of the customer engaging in the short sale, and typically are generated by the short sale itself.

Where the broker has provided collateral to another broker or institution to secure the loan of securities, the borrowing broker typically receives a portion of any interest earned on the collateral, known as a "rebate." The borrowing broker does not usually pass any of the interest on to its customer, although an exception is sometimes made for large or professional customers.

In essence, the complaint alleges that PaineWebber uses its customers' assets, in the form of cash and stock collateral and proceeds of short sales, to earn interest and to obtain other financial benefits without notifying the customers of this practice or sharing the proceeds with them. Based upon these allegations, Levitin and the putative class assert claims for securities fraud, breach of fiduciary duty, breach of trust, breach of implied covenants of good faith and fair dealing, and violation of Article 9 of the Uniform Commercial Code.

### DISCUSSION

#### A. Standard for Motion to Dismiss

In ruling upon the motion to dismiss the complaint under Rule 12(b)(6), I must view the complaint in the light most favorable to Levitin, accepting all allegations contained in the complaint as true. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Annis v. County of Westchester, 36 F.3d 251, 253 (2d Cir. 1994). All reasonable inferences are to be drawn in the plaintiff's favor, and the claims should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. See Scheuer, 416 U.S. at

---

1. The facts alleged in the complaint are taken as true for purposes of this motion to dismiss.

2. The Securities and Exchange Commission ("SEC") has defined the term "short sale" as "any sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by, or for the account of, the seller." 17 C.F.R. § 240.3b–3.

3. For short sales of nonexempted securities, Regulation T requires that customers meet an initial margin requirement of 150% of the market value of the security being sold. 12 C.F.R. § 220.19(c). The New York Stock Exchange (the "NYSE") imposes separate maintenance margin requirements for short sales. See NYSE Rule 431(c); see also Regulation T, 12 C.F.R. § 220.1(b)(2) (permitting exchanges to impose margin requirements above those set by the Federal Reserve Board).

236, 94 S.Ct. at 1686 (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 639 (2d Cir.1994).

## B. Securities Fraud Claims

Levitin bases her securities fraud claims upon defendant's alleged violation of three rules promulgated under section 10(b) of the 1934 Act: Rule 10b–5, Rule 10b–10, and Rule 10b–16.

### 1. Rule 10b–5

To state a claim under section 10(b) and Rule 10b–5, the general securities fraud provision, a plaintiff must allege that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury." *In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 264 (2d Cir.1993) (*quoting Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir. 1985)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994) (internal quotations omitted); *accord Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995); *see Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986) ("To state a claim under Section 10(b), a complaint must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security.") (*citing Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

▆ The alleged misrepresentation or omission must be made "in connection with the purchase or sale" of a security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5; *see Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). To satisfy this requirement, the misrepresentation or omission must pertain to the securities themselves; allegations of fraud merely involving securities are not sufficient. *See Chemical Bank,* 726 F.2d at 943. In *Chemical Bank* the Second Circuit de-

scribed the rationale for this requirement as follows:

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

726 F.2d at 943. Many securities fraud claims have been dismissed because the alleged misrepresentation did not pertain to the securities involved in the purchase or sale. *See, e.g., Abrash v. Fox,* 805 F.Supp. 206, 208–09 (S.D.N.Y.1992) (holding that misrepresentations must involve nature or quality of security); *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co.,* 770 F.Supp. 176, 181 (S.D.N.Y.1991) ("Misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5.") (citations omitted); *Vigilant Ins. Co. v. C. & F. Brokerage Servs.,* 751 F.Supp. 436, 438 (S.D.N.Y.1990) (to be actionable as securities fraud, "the misrepresentation must relate to the value of the security"); *see also Crummere v. Smith Barney, Harris Upham & Co.,* 624 F.Supp. 751, 755 (S.D.N.Y.1985).

The holding in *Vigilant* is instructive here. *Vigilant* involved a NYSE specialist firm that satisfied its own delivery obligations with stock it borrowed from other brokerage houses through the assistance of the defendants, who served as middlemen or "finders." 751 F.Supp. at 437. The firm would provide cash collateral to the finders and, when the borrowed stock was returned, was supposed to receive its collateral plus an interest payment. *Id.* Claiming that the finders defrauded it of the interest payments, the firm sought to recover for securities fraud. *Id.* Although the fraud involved the borrowing of stock, Judge Duffy held that the alleged retention of plaintiff's interest was not perpetrated in connection with the purchase or sale of securities because it did not affect the investment value of the stock. *Id.* at 438.

■ In this case, Levitin does not allege that PaineWebber's short sale practices related in any way to the value of the securities sold by her or to the price that she received for selling those securities. Although the nondisclosure of the interest PaineWebber earned on its customer's funds may have affected the customer's decision to open an account with defendant, the interest is not part of the consideration received by the customer for the sale of securities. *See Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 108 (2d Cir.1986). Nor does plaintiff allege that she relied upon PaineWebber's nondisclosure in deciding to conduct short sales of securities or in deciding what securities to sell.

The right to invest and earn interest on the collateral or proceeds of a short sale does not pertain to the securities, but is merely a term of the arrangement between the broker and its customer under which the broker conducts short sales for the customer. *Cf. Bosio v. Norbay Sec., Inc.*, 599 F.Supp. 1563, 1566 (E.D.N.Y.1985) (broker's misrepresentation that he would distribute sale proceeds in accordance with customer's instructions did not constitute securities fraud, as it did not induce purchase or sale of securities but merely concerned mechanics of sale). As in *Bosio*, the alleged nondisclosure at issue in this case pertains not to the sale of the securities or the value of the securities themselves, but to the terms of the relationship between the broker and the customer. Accordingly, the alleged nondisclosure does not constitute securities fraud in violation of section 10(b) and Rule 10b–5.

Plaintiff also seeks to base her securities fraud claim on PaineWebber's breach of its alleged fiduciary duty to its customers. The parties disagree as to whether PaineWebber owed a fiduciary duty to its customers to disclose the interest earned on their funds.[4] Although a breach of fiduciary duty does not give rise to a securities fraud claim merely because it involves a securities transaction, *see Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 479–80, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977); *Field v. Trump*, 850 F.2d 938, 946–48 (2d Cir.1988), *cert. denied*, 489 U.S.

1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989), a breach of fiduciary duty may constitute securities fraud where the breach involves deception achieved through a misrepresentation or nondisclosure in connection with the purchase or sale of securities. *See Pross v. Katz*, 784 F.2d 455, 457–58 (2d Cir.1986). Regardless of whether PaineWebber owed a fiduciary duty to its customers to disclose the fact that it earned interest on their funds, however, this claim must fail to the extent it relies on section 10(b) and Rule 10b–5, for the nondisclosure was not made in connection with the purchase or sale of securities, as discussed above.

As PaineWebber's failure to disclose that it earned interest on its customers' collateral and the proceeds of their short sales was not "in connection with" the purchase or sale of securities, plaintiff's securities fraud claim based upon Rule 10b–5 is hereby dismissed. Because I hold that Levitin has failed to meet the "in connection with" requirement, I need not reach defendant's arguments that plaintiff has failed to adequately plead the other elements of her securities fraud claim.

**2. Rule 10b–10**

■ The "confirmation rule," Rule 10b–10, requires broker-dealers to provide customers with a written confirmation at or before completion of a securities transaction. The confirmation must contain information such as the date and time of the transaction, whether the broker-dealer is acting as agent for the customer, and the amount of remuneration to be received by the broker-dealer. *See* 17 C.F.R. § 240.10b–10. Levitin claims that PaineWebber's nondisclosure of the interest it earns on its customers' collateral violates Rule 10b–10's requirement that the broker notify the customer of "[t]he source and amount of any other remuneration received or to be received by the broker in connection with the transaction." 17 C.F.R. § 240.10b–10(a)(2)(i)(D).

PaineWebber argues that plaintiff's claim should be dismissed because no private cause of action exists for a broker's failure to comply with Rule 10b–10. It is not clear wheth-

---

4. Defendant argues that its relationship with its customers is merely that of debtor and creditor; plaintiff claims that PaineWebber is her fiduciary based upon agency and trust principles.

er a private right of action exists for violation of Rule 10b–10. *Cf. Arst v. Stifel, Nicolaus & Co.,* No. 95–3005, 1996 WL 312721, at *3–4 (10th Cir. June 11, 1996) (declining to recognize cause of action for failure to provide names of customers as required by Rule 10b–10(a)(7)(i) where conduct at issue was not prohibited by section 10(b) of 1934 Act). I need not resolve this issue, however, because even assuming that a private cause of action exists for violations of Rule 10b–10 Levitin has failed to state a claim under section 10(b) of the 1934 Act.

In assessing the scope of liability under the SEC regulations promulgated pursuant to section 10(b), courts are to follow the language of the enabling statute.[5] *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, ——, 114 S.Ct. 1439, 1446, 128 L.Ed.2d 119 (1994) ("[T]he private plaintiff may not bring a 10b–5 suit against a defendant for acts not prohibited by the text of § 10(b)."); *Ernst & Ernst,* 425 U.S. at 213–14, 96 S.Ct. at 1391; *Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 249 n. 11 (2d Cir.1979); *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 949–50 (3d Cir.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985) ("Since section 10(b) contains the 'in connection with' language, all rules stemming from it must also contain this limitation.") (citation omitted). Therefore, liability under Rule 10b–10 can only be imposed for conduct that violates section 10(b) of the 1934 Act. Because PaineWebber's alleged nondisclosures were not in connection with the purchase or sale of a security, they are not prohibited by the statute and, hence, cannot support a claim for securities fraud under section 10(b) of the 1934 Act. *See Arst,* 1996 WL 312721, at *4 (nondisclosures after sale were not in connection with purchase or sale of securities, and, therefore, defendants' conduct did

not give rise to private cause of action even though it was proscribed by Rule 10b–10).

Accordingly, Levitin's claim based upon PaineWebber's failure to comply with the disclosure requirements of Rule 10b–10 must be dismissed, because the alleged nondisclosure was not in connection with the purchase or sale of a security within the meaning of the 1934 Act.

### 3. *Rule 10b–16*

▮ Rule 10b–16 prohibits brokers from extending credit to customers in securities transactions without disclosing the terms of the extension of credit, including interest rates, the method of determining balances, and other charges resulting from the extension of credit. *See* 17 C.F.R. § 240.10b–16. Levitin alleges that PaineWebber's conduct violated Rule 10b–16's requirements concerning disclosure of, *inter alia,* finance charges, conditions under which annual interest rates can be imposed, rebates, methods of computing interest, methods of determining balances on which interest is to be charged and whether credit is to be given for credit balances in cash accounts, other charges resulting from the extension of credit, and the nature of the broker's interest in the collateral. *See* Cmplt. ¶ 43. As Levitin's complaint contains no factual allegations regarding finance charges, interest rates, methods of determining balances, or provision of credit for credit balances, however, these alleged violations of Rule 10b–16 cannot form the basis of Levitin's claim. The only facts that plaintiff alleges in support of this claim, and, hence, the only facts that I will consider in ruling on this motion, concern PaineWebber's nondisclosure of the interest it earns on its customers' collateral.

Although Rule 10b–16 does not create an express cause of action for violation of its provisions and the Second Circuit has de-

---

5. Section 10(b) provides that:
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   (b) To use or employ, *in connection with the purchase or sale of any security* registered on a

national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. §.78j(b) (emphasis added).

clined to resolve the issue of whether an implied cause of action exists, *see Zerman v. Ball,* 735 F.2d 15, 23 (2d Cir.1984), other courts have recognized an implied cause of action under section 10(b) of the 1934 Act for violations of Rule 10b–16. *See, e.g., Angelastro,* 764 F.2d at 949–50; *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 539 (9th Cir.1984); *Liang v. Dean Witter & Co.,* 540 F.2d 1107, 1113 n. 25 (D.C.Cir.1976); *Metzner v. D.H. Blair & Co.,* 689 F.Supp. 262, 267 (S.D.N.Y.1988); *Slomiak v. Bear Stearns & Co.,* 597 F.Supp. 676, 677–81 (S.D.N.Y.1984).

As with the other regulations promulgated under section 10(b) of the 1934 Act, however, a cause of action for violation of Rule 10b–16 can only be maintained where the claim stems from the enabling statute's prohibition of the use of deceptive and manipulative devices in connection with the purchase or sale of securities. *See Angelastro,* 764 F.2d at 946; *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1358 n. 8 (11th Cir.1985) (without deciding issue, court stated that "violations of Rule 10b–16 may give rise to a private cause of action under section 10(b) only to the extent that the violations arise out of the purchase or sale of securities"); *cf. Metzner,* 689 F.Supp. at 267 (holding that plaintiff stated claim for violation of Rule 10b–16 where it could be inferred that plaintiffs were misled into purchasing securities due to broker's violation of rule). Here, as PaineWebber's nondisclosures did not pertain to the purchase or sale of securities, Levitin cannot recover under section 10(b) for the alleged violations of Rule 10b–16.

### CONCLUSION

As Levitin has failed to state a claim upon which relief may be granted under section 10(b) of the 1934 Act, her claims based upon that statute and the regulations promulgated thereunder are dismissed. Because I have dismissed all of plaintiff's federal claims, and given the early posture of this case, I decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs,*

383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.), cert. denied, 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).[6] Accordingly, the state law claims are dismissed as well.

SO ORDERED.

---

**6.** Although Levitin states in her complaint that jurisdiction is also founded upon 28 U.S.C. § 1332, plaintiff has not pleaded any facts supporting diversity jurisdiction, such as her state of domicile or the amount in controversy.