Aaron ABADA, on behalf of himself and all others similarly situated, Plaintiff,

v.

CHARLES SCHWAB & CO., INC., a California corporation, and Does 1 through 10, Defendant.

No. 99–CV–0940 K(JAH).

United States District Court, S.D. California.

Sept. 7, 1999.

Schwab & Company, Inc. (hereafter, "Schwab") regarding Schwab's on-line brokerage account services and its capacity to handle and execute on-line trades. Plaintiff Aaron Abada asserts five causes of actions against Schwab, individually and on behalf of all others similarly situated, alleging violations of unfair trade practices under California's Business & Professions Code, Section § 17200 *et seq.*, violations of false and misleading advertising under California's Business & Professions Code, Section § 17500 *et seq.*, unjust enrichment, negligent misrepresentation, and fraud and deceit.

Plaintiff alleges that he opened an on-line securities trading account with Schwab in reliance on Schwab's representations at its internet site "that Schwab would provide fast, high quality executions." Plaintiff's Complaint, ¶ 9. Plaintiff further alleges that Schwab made representations in its on-line brochure that "[m]arket orders entered while the market is open are subject to *immediate execution*," and that once a customer "confirm[s]" his or her order, it is "sent through Schwab *directly to the trading floor*." *Id.* at ¶ 17. According to Plaintiff, however, "in light of the large number of Schwab accounts and the rapid rate at which it had been adding new accounts, Schwab knew or should have known that its representations to customers regarding the manner in which their accounts would be handled were false." *Id.* at ¶ 19.

James C. Krause, Krause and Kalfayan, San Diego, CA, for Plaintiff.

Robert E. Gooding, Jr., Howard Rice Nemerovski Canady, Falk and Rabkin, Newport Beach, CA, for Defendant.

## ORDER DENYING MOTION TO REMAND TO STATE COURT

KEEP, District Judge.

Plaintiff filed the present motion for remand to state court on July 23, 1999. An opposition was filed by Defendant on August 16, 1999. Both parties are represented by counsel.

## I. *Background*

This action arises out of a dispute over public statements made by Charles

On November 13, 1998, the internet company known as "theglobe.com" (hereafter, "TGLO") was scheduled to begin secondary trading on the NASDAQ after the initial public offering of TGLO stock the previous day. *See* Defendant's Opposition, at p. 2, lines 10–12. On that day, Plaintiff alleges that at approximately 9:20 a.m. E.S.T., shortly before the market opened, he placed a market order to buy 500 shares of TGLO stock through Schwab's web site and thereafter received an "Order Acknowledgment." *See* Plaintiff's Complaint, ¶ 29. Plaintiff further alleges that

shortly after the market opened, when TGLO was trading at $50 ⅛ a share, Plaintiff decided to liquidate his recently-purchased TGLO stocks. *See id.* at ¶ 30. However, according to Plaintiff, after numerous failed attempts to access his Schwab account through the Schwab web site, Plaintiff finally "was able to log onto his Schwab account," only to find that his "account did not reflect an order confirmation." *Id.* In fact, Plaintiff alleges his order confirmation was delayed over three hours. *See id.* at ¶¶ 6, 31. In addition, Plaintiff states that he later learned that "shares were purchased in his account at $86½, which was $36 more than the price" at which Plaintiff placed his original order on-line. *Id.* By the time Plaintiff was informed of his purchase, Plaintiff alleges that the price had dropped to $70 a share. *See id.* at ¶ 6. As a consequence of his inability to access his Schwab account and the delay of his order of TGLO shares, Plaintiff alleges "substantial losses within his account." *Id.* at ¶ 6.

On April 5, 1999, Plaintiff filed this action against Schwab in the Superior Court for the County of San Diego, purporting to represent:

> all investors who had online accounts with Schwab on November 13, 1998, and: (A) who placed market orders to purchase or sell TGLO; (B) whose market orders were delayed by more than one minute and executed at disadvantageous prices, or whose market orders were not confirmed instantaneously, and (C) who were damaged thereby. *Id.* at ¶ 7.

On May 6, 1999, Defendant filed a notice of removal of this action to this court, pursuant to 28 U.S.C. §§ 1441 and 1446 and the Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353, 112 Stat. 3227 (1998) (hereafter "the Uniform Standards Act").

On July 23, 1999, Plaintiff filed this motion to remand the action to state court. Defendant opposes, alleging that Plaintiff's claims, notwithstanding Plaintiff's attempts at "creative pleading," are all preempted by the Uniform Standards Act. *See* Defendant's Opposition, at p. 1, lines 13–20. Defendant alleges that pursuant to the Uniform Standards Act, "every claim alleging fraud or misrepresentation in connection with the purchase or sale of a security traded on a national exchange, like Plaintiff's claims here, must be brought in federal court." *Id.,* at p. 5, lines 12–15. In reply, Plaintiff asserts that Schwab has failed to carry its burden of establishing that removal is proper under the artful pleading doctrine. *See* Plaintiff's Memorandum in Support of Plaintiff's Motion to Remand to State Court, at pp. 2–4 ("Plaintiff's Memorandum"). Moreover, Plaintiff asserts that Schwab's alleged misrepresentations are not "in connection with the purchase or sale of a covered security" within the meaning of 15 U.S.C. § 78bb(f)(1) of the Uniform Standards Act and that the Uniform Standards Act was not meant to preempt non-securities fraud claims like Plaintiff's claim, which is based on state statutory or common law. *See id.,* at p. 4–5. Therefore, Plaintiff asserts that this action should be remanded to state court.

## II. *Legal Standard*

 Removal jurisdiction is governed by 28 U.S.C. § 1441, *et seq.* Doubts as to removability are usually resolved in favor of remanding the case to state court. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *See also Boggs v. Lewis,* 863 F.2d 662, 663 (9th Cir.1988). The defendant has the burden of establishing that removal is proper. *See Nishimoto v. Federman– Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990).

 Removal is only appropriate for cases that might have originally been brought in federal court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Cases arise under federal law only if the complaint establishes either that federal law creates the cause of action or that the

plaintiff's right to relief necessarily depends on the resolution of substantial questions of federal law. *See Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The plaintiff is the master of the claim, and federal jurisdiction exists only when a federal question is presented on the face of the properly pleaded complaint. *See Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). "[I]t is well settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. 2425 (italics in original) (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. at 12, 103 S.Ct. 2841.)

However, there exists an " 'independent corollary' to the well-pleaded complaint rule" called the " 'complete preemption' " doctrine. *Id.* at 393, 107 S.Ct. 2425 (quoting *Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. 2841). Complete preemption occurs where the "preemptive force of a statute" is so "extraordinary" as to convert state claims into federal claims. *Id.* at 393, 103 S.Ct. 2841. "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393, 103 S.Ct. 2841 (citing *Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. 2841).

1. Plaintiff did not rebut, nor does he appear to dispute, that his purported class action is a "covered class action," that TGLO is a "covered security," and that all his claims are based on state statutory or common law for the purposes of the Uniform Standards Act. Therefore, the court will presume, without deciding, that Plaintiff's purported class ac-

### III. *Discussion*

In this case, the heart of the dispute between the parties is the determinative question of whether the state law claims alleged in Plaintiff's complaint are *completely* preempted because they fall within scope of the Uniform Standards Act's limitations on class actions pursuant to subsections (f)(1) and (2) of 15 U.S.C. § 78bb. Because the court finds that the Uniform Standards Act completely preempts Plaintiff's state law claims, federal subject matter jurisdiction exists, and removal is therefore proper.

Plaintiff asserts five claims against Schwab: (1) violation of California's Business & Professions Code, Section § 17200 *et seq.*; (2) violation of California's Business & Professions Code, Section § 17500 *et seq.*; (3) unjust enrichment; (4) negligent misrepresentation; and (5) fraud and deceit. Plaintiff argues that his claims are not preempted by the Uniform Standards Act because his claims against Defendant are not matter connected with the purchase of securities.[1] *See* Plaintiff's Reply Memorandum, at p. 4, lines 11–13. Plaintiff's arguments, however, fail chiefly for three reasons: (1) His interpretation of the phrase "in connection with the purchase or sale of a covered security" is contrary to the plain language of the Uniform Standards Act; (2) His interpretation of the "in connection with" language found in federal securities laws contravenes the great weight of authority broadly construing the language; and (3) The result of remanding Plaintiff's state law claims to state court would frustrate the federal legislative objectives of the Uniform Standards Act.

As indicated above, where Congress intends to completely occupy a field so as to supplant state laws, "any civil

tion is a "covered class action" involving a "covered security" "based upon the statutory or common law of any state or subdivision thereof" for purposes of deciding this motion. *See* 15 U.S.C. § 78bb(f)(1). For an explanation of a "covered class action" and a "covered security," see *infra* text, Section IIIA.

complaint raising this select group of claims is necessarily federal in character." *See Toumajian v. Frailey,* 135 F.3d 648, 653 (9th Cir.1998). Even if the only claim in a complaint is a state law claim and no federal claim is alleged, if that only claim in the complaint is one that is *completely* preempted by federal law, federal subject matter jurisdiction exists, and removal is therefore proper. *See id.*

The court finds that Plaintiff's claims are preempted by the Uniform Standards Act. An exercise of jurisdiction by the court is therefore appropriate.

### A. Securities Litigation Uniform Standards Act of 1998

The Securities Litigation Uniform Standards Act of 1998 was enacted into law on November 3, 1998. The Uniform Standards Act amended the Securities Exchange Act of 1934 to preclude a private party from bringing a "covered class action" in federal or state court based on the statutory or common law of any state alleging a "misrepresentation or omission of a material fact" or the use of "any manipulative device or contrivance" "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). As a generality, covered class actions are those class actions involving common questions of law or fact brought on behalf of more than 50 persons or those actions brought on behalf of one or more unnamed parties. *See* 15 U.S.C. § 78bb(f)(5)(B). A "covered security" is a "security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b)" of Title 15 of the United States Code "at the time during which it is alleged that the misrepresentation, omission, or deceptive conduct occurred." 15 U.S.C. § 78bb(f)(5)(E). Generally speaking, a security is a covered security under 15 U.S.C. § 77r(b) if it is listed, or authorized for listing, on the New York Stock Exchange, the American Stock Exchange, or on the Nasdaq Stock Market, or if it is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940. *See* 15 U.S.C. § 77r(b). The relevant portion of the Uniform Standards Act reads:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security. 15 U.S.C. § 78bb(f)(1).

This limitation on securities fraud class actions is quite sweeping—it governs all "covered class actions" "based upon the statutory or common law of any State" with a few, limited exceptions for "preserved actions." *See* 15 U.S.C. § 78bb(f)(1). The Uniform Standards Act further provides for the removal of covered class actions, as set forth in subsection (f)(1), from state court to federal district court:

> Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court in the district the action is pending, and shall be subject to paragraph (1). 15 U.S.C. § 78bb(f)(2).

The legislative history shows that Congress sought to establish federal courts as "the *exclusive* venue for most securities class action lawsuits" involving nationally traded securities. H.R.Conf.Rep. No. 803, 105th Cong., 2d Sess. at 13 (1998) ("House Report") (emphasis added). According to the House Report, the purpose of the Uniform Standards Act was to "prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal, court." *Id.* The House report noted that one year after the passage of the Private Securities Litigation Reform

Act of 1995 in which procedural and substantive protections against abusive and meritless "strike" suits in federal courts were implemented, the Securities and Exchange Commission reported a significant shift of securities fraud cases from federal to state court. *See id.* at 14. The purpose of these strike suits, according to the House Report, is to "extract a sizable settlement from companies that are forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigating." *Id.* at 13. Thus, "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate" federal objectives, Congress found it "appropriate to enact national standards for securities class action lawsuits involving nationally traded securities." *Id.* at 2. It appears that Congress's intention, then with the exception of certain "preserved" actions,[2] was to completely preempt state securities class actions alleging fraud or manipulation relating to covered securities when it enacted the Uniform Standards Act. *See id.* at 13.

## B. Preemption

The essence of the dispute between the two parties is whether Plaintiff's claims are preempted (and therefore removable to federal district court) by the Uniform Standards Act. Plaintiff asserts three main arguments in their Memorandum in support of their motion: (1) Since Plaintiff has not alleged any securities fraud claims against Schwab and Schwab's conduct had nothing to do with the trading of any particular security, Plaintiff has not frustrated any legislative intent to eliminate the shifting of *securities* fraud actions to state courts in order to avoid the higher federal pleading standards. (2) Schwab's alleged misrepresentations were not "in connection with the purchase or sale of a covered security" under 15 U.S.C. § 78bb(f)(1) since the misrepresentations

did not affect the value of the security but merely "involve[d] the relationship between Schwab and its customers." (3) The Uniform Standards Act intended to govern only cases involving the purchase or sale of securities by the issuer or an affiliate of the issuer, and since Schwab is not an issuer of securities, the Uniform Standards Act does not govern Schwab's alleged misrepresentations in this case. *See* Plaintiff's Memorandum, at pp. 5–7. Plaintiff's arguments are either unsupported by authority, or they run counter to established authority. Therefore, the Court does not find Plaintiff's arguments to be persuasive; each shall be addressed in turn.

### 1. Non–Pleading of Securities Fraud Claims

In essence, Plaintiff is arguing that since he has not alleged any securities fraud claims against Schwab, his claims are not governed by the Uniform Standards Act regarding the limitation on securities fraud class actions. Plaintiff misconstrues the complete preemption doctrine. The fact that he has not asserted a federal claim in his complaint is irrelevant. As stated above in Section II, Congress may have chosen to "so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Toumajian v. Frailey,* 135 F.3d at 653. Thus, the "preemptive force" of the Uniform Standards Act, the statute at issue, essentially works to convert Plaintiff's alleged state claims into federal claims. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425.

Moreover, Plaintiff's assertion that Defendant "has failed to carry its burden of establishing the artful pleading doctrine" is irrelevant. *See* Plaintiff's Memorandum, at p. 2, line 19. First, Defendant did not allege that Plaintiff had engaged in "artful pleading." Second, Plaintiff's characterization of his claims are not at issue. The

---

**2.** Congress explicitly provided for the "preservation" of state jurisdiction over certain types of actions in subsection (f)(3), notwithstanding the limitations on class actions set forth in

15 U.S.C. § 78bb(f)(1). *See* 15 U.S.C. § 78bb(f)(3). The preservation clause is understood as a limited exception to the general preemptive effect of the statute.

issue, rather, is the substance of the claims contained in the complaint, *not* the particular semblance in which it is cloaked.

### 2. "In Connection With" Language

■ The relevant inquiry in assessing preemption in this case is whether Defendant's alleged misrepresentations were "in connection with the purchase or sale of securities" within the meaning of subsection (f)(1) of the Uniform Standards Act. 15 U.S.C. § 78bb(f)(1). Defendant contends that the Uniform Standards Act's "in connection with" language should be read broadly, "in accord with the U.S. Supreme Court and Ninth Circuit authority mandating a broad and flexible construction of the language as it appears in Section 10(b) and Rule 10b–5." *See* Defendant's Opposition, at p. 12, lines 4–6. The court agrees.

Since the Uniform Standards Act's enactment in November 1998, there has been no published opinion on the construction of the Act's "in connection with" language for purposes of determining the preemption of states securities claims. The Uniform Standards Act's "in connection with" language is a paraphrase of the second clause of Rule 10b–5 and of Section 10(b) of the Exchange Act, the major anti-securities fraud provisions. *See* 3 Sec. & Fed. Corp. Law § 16.75. In the absence of case law construing the Uniform Standards Act's pertinent language, the court will look to federal cases construing Section 10(b) and Rule 10b–5 as instructive in interpreting the scope of the "in connection with" language. *See* 15 U.S.C.A. § 78J(b) (Securities Exchange Act of 1934 § 10(b)) and 17 CFR § 240.10B–5 (Securities and Exchange Commission Rule 10b–5 promulgated pursuant to Section 10(b)).

In *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), the Supreme Court stated that "Section 10(b) must be read flexibly, not technically and restrictively." *Id.* Similarly, in *Arrington v. Merrill Lynch*, 651 F.2d 615, 619 (1981), the Ninth Circuit reiterated the Supreme Court's flexible standard and stated that when "there is a sale of a security and

fraud 'touches' the sale, there is redress under section 10(b)," regardless of the fact that "the fraud is not of the 'garden variety' associated with securities sales." In *Arrington*, the court held that a misrepresentation as to the risks of buying securities on margin in a declining market is fraud "in connection with" the purchase of securities since it "induce[d]" the plaintiff to "engage in commission-producing securities purchases" through Merrill Lynch. *Id.*

*Arrington* is consistent with cases from other jurisdictions which have held that a broker's misrepresentations regarding the risk of a particular investment or investment system or method were "in connection with the purchase or sale" of securities under Section 10(b) and Rule 10(b)–5. For example, in *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939 (3d Cir.1985), cert. denied, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985), the court held that the nondisclosure and misrepresentations regarding credit terms of margin accounts were sufficiently causally connected to the plaintiff's loss to be "in connection with the purchase or sale" of securities. In *Alvord v. Shearson Hayden Stone, Inc.*, 485 F.Supp. 848 (D.Conn. 1980), the court held that where a stockbroker's agent made misrepresentations that his investment system was "risk-free" in order to convince the plaintiff to invest in a stock option trading account, these statements were "in connection with" the plaintiff's investments, which were securities.

Likewise, in the present case, all the misrepresentations Plaintiff alleges that Defendant Schwab made were regarding the "characteristics and capabilities of Schwab trading systems," particularly the *risks* involved in such a trading system. *See* Complaint, ¶ 61. Thus, these alleged misrepresentations were inherently "in connection with" the purchase or sale of securities since the chief purpose of an online trading account is to facilitate the purchase or sale of securities.

The court in *In re Financial Corp. of America Shareholder Litigation,* 796 F.2d 1126, 1130 (9th Cir.1986) stated that in determining whether the "in connection with" requirement has been met, the court must consider whether a causal connection between the fraud and the transaction has been shown. The court quoted with approval Second Circuit authority that the allegations of actual causation in fact must be in the form of "loss causation" and "transaction causation." *Id.* The *In re Financial Corp* court defined "loss causation" as fraud causing economic harm and "transaction causation" as fraud causing the plaintiff to engage in the transaction. *See id.* In the present case, both "loss causation" and "transaction causation" are present. First, these misrepresentations were causally connected to Plaintiff's loss since Plaintiff himself admits in his complaint that he "suffered substantial losses within his account" because Schwab "knowingly and/or recklessly delayed market orders on behalf of Schwab customers . . . and executed the orders at consistently disadvantageous prices." *See* Complaint, ¶ 6. Second, there was "transaction causation" since Plaintiff alleged that he opened his Schwab account on inducement by and "in reliance on Schwab's claims on its World Wide Web site." *Id.* at ¶ 9.

Plaintiff, however, disputes that a causal connection existed because "Schwab has not made any representation as to any *specific* security," including TGLO. Additionally, Plaintiff argues Schwab has not shown any intent to manipulate the price of any stock. *See* Plaintiff's Memorandum, at p. 5, lines 17–19 (emphasis added). The court find these arguments unpersuasive. First, Plaintiff has cited no authority for the propositions he assert. Second, Plaintiff's interpretation is contrary to the plain language of the Uniform Standards Act and Section 10(b) which require that the misrepresentation or omission be in "connection with *the purchase or sale of* a covered security," not that the representation itself be related to a specific security or its value or price. In fact, the Ninth Circuit has rejected the argument that

fraud must affect the value of the securities in *Lanning v. Serwold,* 474 F.2d 716, 718 (9th Cir.1973).

Plaintiff appears to rely on *Levitin v. PaineWebber, Inc.,* 933 F.Supp. 325 (S.D.N.Y.1996) for the proposition that a plaintiff's securities fraud claims fails if a plaintiff does not allege that a defendant's "[fraudulent] . . . practices related in any way to the value of the securities sold to her." Plaintiff's Memorandum, at p. 6, lines 14–15. *Levitin* is inapposite because in the present case, Plaintiff has *already* alleged that Schwab's fraudulent acts and misrepresentations have affected the value of specific securities purchased by Plaintiff. *See* Complaint, ¶¶ 3–6.

■ Plaintiff also relies on *Levitin* for the proposition that there is no "connection with the purchase or sale of" securities where the fraud "merely [concerns] a term of the arrangement between the broker and its customer under which the broker conducts . . . [transactions] for the customer." Plaintiff's Memorandum, at p. 6, lines 16–19. Thus, according to Plaintiff, since the fraud at issue here merely "involves the relationship between Schwab and its customers," it cannot be construed as relating to the "purchase or sale" of a covered security under subsection (f)(1). *Id.* at p. 6, lines 4–7. Not only does Plaintiff misconstrue *Levitin, Levitin* is also inapposite for the proposition Plaintiff cites. *Levitin* concerned the alleged misappropriation of collateral supplied to brokers by customers in connection with a customer's short sale activity; the defendant Paine Webber's misappropriation in *Levitin* was not "in connection with the purchase or sale" of securities since Paine Webber's nondisclosure of interest on the collateral had no effect on any actual or intended "purchase or sale of" securities. The defendant merely used the misappropriated interest to maintain its own interests and to pay for its own company expenses. More importantly, *Levitin* does not stand for the proposition that no causal connection exists under the Uniform Stan-

dards Act, Section 10(b), or Rule 10b–5 merely because fraudulent misrepresentations like the ones alleged by Plaintiff against Schwab "involve[ ] the relationship" between a broker and its customers and not the "sale or purchase of" securities. The Supreme Court warned in *Bankers Life* that the "disregard of trust relationships" by fiduciaries are often an entangled web with manipulation, fraud, investor ignorance, and the like. *Bankers Life & Cas. Co.*, 404 U.S. at 12, 92 S.Ct. 165. Thus, terms affecting the arrangement between a broker and its customers are directly related to fraudulent practices perpetrated "in connection with the purchase or sale of" securities.

In sum, in light of the broad construction by the Supreme Court and the Ninth Circuit of the phrase "in connection with the sale or purchase" of securities, or the plain meaning of the language, the court finds that Defendant's alleged misrepresentations were "in connection with the purchase or sale of securities" within the reach of subsection (f)(1) of the Uniform Standards Act. The court's finding is consistent with the public policy concerns reflected in the passage of the Act and discussed *supra* in section IIIA. As the legislative record states in the House Report, "[u]nder the [Uniform Standards Act], class actions relating to a 'covered security' (sic) alleging fraud or manipulation must be maintained pursuant to the provisions of *Federal* securities law, in *Federal* court." H.R.Conf.Rep. No. 803, 105th Cong., 2d Sess. at 13 (emphasis added). Therefore, Plaintiff's claims are preempted and removal is proper under 15 U.S.C. § 78bb(f)(2).

**3. The Purchase or Sale of Securities by the Issuer or An Affiliate of the Issuer**

■ Plaintiff's last argument in their Memorandum in Support of their Motion to Remand is that since the Uniform Standards Act intended to govern only cases involving the purchase or sale of securities by the issuer or an affiliate of the issuer, and Schwab is not an issuer of securities, the Uniform Standards Act does not govern Schwab's alleged misrepresentations in this case. The court rejects this argument. First, there is no support for Plaintiff's assertion that the Uniform Standards Act "makes clear that the type of cases covered by the USA [Uniform Standards Act] involve the purchase or sale of securities by the issue or an affiliate of the issuer." Plaintiff's Memorandum, at p. 7, lines 8–10. Furthermore, as stated in Section IIIA above, Congress' clear intent in the passage of the Uniform Standards Act was to enact *uniform,* national rules and to preclude "all covered class action[s] based on the statutory or common law of any State" from being maintained in any state or federal court based on claims of fraud, deceit, or misrepresentation "in connection with the purchase or sale of a covered security." *See* H.R.Conf.Rep. No. 803, 105th Cong., 2d Sess. at 2, 13.

Limiting the governance of the Uniform Standards Act in the manner that Plaintiff asserts would thwart clear legislative intent to make federal courts the "exclusive venue" for securities class actions, for it would "preserve" all *state* law securities claims alleging fraud "in connection with the purchase or sale of a covered security" by brokers, dealers, clearinghouses, etc.— anyone not an issuer or affiliate of an issuer. *See id.* at 13–15. There is simply no indication that Congress had an intention to so limit the Uniform Standards Act. In fact, Congress provided for an explicit "preservation" provision in 15 U.S.C. § 78bb(f)(3) for exceptions for certain types of actions. This preservation clause, or carve-out, exempts certain claims from the wide-sweeping limitation in subsection (f)(1) of the Uniform Standards Act. 15 U.S.C. § 78bb(f)(3) preserves state jurisdiction over (1) certain actions that are based upon the law of the state in which the issuer of the security in question is incorporated and that involve equity holders voting responsibilities or actions by the issuer or an affiliate of the issuer; (2) actions brought by state and

political subdivisions and state pension plans; (3) actions based on indenture trustee agreements; and (4) shareholder derivative actions. *See* 15 U.S.C. § 78bb(f)(3).

Plaintiff's claims do not fall within any of these explicit exceptions provided for by Congress, nor does Plaintiff maintain that his claims are "preserved." *See* Plaintiff's Memorandum, at p. 7, lines 12–15. Rather, Plaintiff argues that his claims are non-securities fraud claims which fall outside the scope of regulation of the Uniform Standards Act. For the reasons discussed above, however, this court holds that Plaintiff's claims fall within the proscription of 15 U.S.C. § 78bb(f)(1), which intended to preempt all *state* securities fraud claims, notwithstanding the manner—or the court—in which the claims are pled. To permit Plaintiff to maintain his claims involving Defendant Schwab's misrepresentations "in connection with the purchase or sale of" securities in state court would thwart Congress' intent in the passage of the Uniform Standards Act to make the federal court the "exclusive venue" for class actions of covered securities.

In sum, a finding of preemption is appropriate given the broad construction of the phrase "in connection with the sale or purchase" of securities, the plain meaning of the language, and the legislative history of the Uniform Standards Act. Therefore, the court finds that an exercise of jurisdiction by the court is proper.

### IV. *Conclusion*

Based on the foregoing analysis, the court DENIES Plaintiff's Motion to remand this case to the Superior Court of the State of California for the County of San Diego.

**IT IS SO ORDERED.**