Printella B. JACKSON, Plaintiff,

v.

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA, et al.,
Defendants.

Civil Action No. 97–0373–BH–S.

United States District Court,
S.D. Alabama,
Southern Division.

Sept. 16, 1997.

Chris T. Hellums, Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, AL, for Plaintiff.

James R. Sturdivant, Michael L. Bell, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, for Defendants.

## ORDER

HAND, Senior District Judge.

### I.

Plaintiff Printella B. Jackson filed her complaint in the Circuit Court for Choctaw County, Alabama, alleging harassment, breach of contract, fraudulent representation, and breach of the duties of good faith and fair dealing in the performance of a contract. Named as defendants are the issuers of two credit cards and two insurance companies who issued policies to the plaintiff to make her credit card payments in the event of her disability. The complaint alleges that plaintiff was the holder of credit cards issued by defendants NOVUS Services, Inc. and FCC National Bank, and that in response to their solicitations, she purchased insurance policies which would make the payments on her credit cards in the event she became unemployed and/or disabled. According to the complaint, these policies were written by defendants American Bankers Insurance Group, American Bankers Insurance Company of Florida, and American Bankers Life Assurance Company of Florida. The complaint continues: plaintiff became completely disabled and involuntarily unemployed on or about February 2, 1994, that she followed the proper procedures to secure her rightful benefits under the two insurance policies, that both insurers wrongfully refused to pay, and that NOVUS and FCC now harass her and

threaten to sue (presumably to collect outstanding balances on her two credit cards).

The complaint "demands judgment against the defendants for *punitive and compensatory damages,* jointly and severally, in the an [sic] amount not to exceed SEVENTY THOUSAND $70,000 DOLLARS, plus the 'costs' of this proceeding." (emphasis supplied). Complete diversity is present.

Defendants filed a notice of removal in this court on April 28, 1997, invoking this court's diversity jurisdiction.[1] On May 12, plaintiff filed a motion asking this court to remand the case and tax costs against the defendants pursuant to 28 U.S.C. § 1447(c). The motion argues that, under the Eleventh Circuit case of *Burns v. Windsor,* 31 F.3d 1092 (11th Cir.1994), defendants have not proven "to a legal certainty" that the amount in controversy actually exceeds $75,000.

Oral argument and a hearing were held on July 14, 1997. The parties have extensively briefed the jurisdictional amount-in-controversy issue and have submitted numerous exhibits and volumes of evidence for this court's consideration. The matter is now ripe for decision; upon consideration, the court finds that the defendants have met their burden of proof under *Burns v. Windsor,* and that the amount in controversy in this case exceeds $75,000 exclusive of interest and costs. Accordingly, the court holds that jurisdiction over the subject matter of this case exists pursuant to United States Code, Title 28, section 1332. Plaintiff's motion to remand (Doc. 4) will therefore be **DENIED.**

## II.

This court, as a creature of Congress, U.S. Const., Art. III, § 1, possesses only that portion of the constitutionally permissible field of Article III jurisdiction specifically granted to it by Congress. The contours of its jurisdiction must not, and may not, be expanded by judicial usurpation. *Snyder v. Harris,* 394 U.S. 332, 341, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969); *Gardner v. Empire Inc.,* 754 F.2d 478, 482 (2d Cir.1985) ("[W]e perceive no role for judicial inventiveness in expanding diversity jurisdiction where Congress has sought to limit it.").

Congress has granted subject matter jurisdiction to the district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" provided that complete diversity exists between the parties. 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806).

■ The burden of proving any jurisdictional facts rests upon the party seeking to invoke the jurisdiction of the federal courts. In removed cases, therefore, this burden rests on the defendant. *Fowler v. Safeco Ins. Co.,* 915 F.2d 616, 617 (11th Cir.1990).

In accordance with these principles of limited jurisdiction, the Court of Appeals for the Eleventh Circuit has held that, when a plaintiff makes a specific demand for judgment for less than the jurisdictional amount set by Congress, the defendant(s) must prove to "a legal certainty" that the amount in controversy actually exceeds the jurisdictional minimum. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092 (11th Cir.1994). Although "the defendant's burden of proof [is] a heavy one," the *Burns* court made it clear that

[a]dopting this standard does not mean that a removing defendant can never prevail. A defendant could remain in federal court if he showed that, *if plaintiff prevails on liability,* an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [the jurisdictional threshold].

*Id.* at 1095–96 (emphasis supplied) The *Burns* standard is "an objective one; plain-

---

1. On April 6, Michael Bell, attorney for the defendants, sent a letter to plaintiff's counsel offering to withdraw the notice of remand if plaintiffs counsel would stipulate to an actual limitation of $75,000 in damages. Plaintiff's counsel declined this offer. Aff. of Michael Bell, Defs' Resp. to Mot. to Remand, Ex. A.

tiff's or plaintiff's counsel's subjective intent in drafting the prayer is not the true issue." *Id.*

Defendants argue that *"Burns* is easily distinguishable from this case because the plaintiff here, unlike the plaintiff in *Burns,* has refused to stipulate that the damages are less than the jurisdictional threshold of this Court." Defs' Resp. to Plt's Mot. to Remand at 4. Defendants' argument overlooks the fact that the district court in *Burns* gave the plaintiff two opportunities to stipulate that she would never seek more than $50,000, her refusal to accept which resulted in the denial of her motion to remand. The fact that the request for the stipulation in the case at bar came from the defendants rather than the trial judge does not distinguish this case from *Burns.* Manifestly, the *Burns* "legal certainty" standard of proof applies to this case.

■ The court now turns its attention to the evidence adduced by defendants in order to determine whether defendants have carried their heavy burden.

Defendants present to the court the affidavits of George L. Priest and Forrest S. Latta, each with exhibits (see Doc. 12). After oral argument on July 14, defendants submitted Exhibit 3 in opposition to remand, which consists of a number of complaints filed by counsel for Ms. Jackson, and Exhibit 3A, which is a table summarizing the complaints in Exhibit 3 in terms of the claims presented and the amount sought in the ad damnum clause.

### a. Professor George Priest

George Priest holds the chair of John M. Olin Professor of Law and Economics at the Yale Law School in New Haven, Connecticut, which must be admitted to be among the finest of America's institutions of legal learning. He has been a professor at Yale since 1980. Professor Priest's affidavit establishes that he has been one of the preeminent scholars in the field of theoretical and empirical

studies of the litigation and settlement process since about that time. He has testified before both Houses of Congress and before many state legislatures and insurance regulatory committees. His curriculum vitae alone covers seven printed pages. Priest Aff. ¶¶ 1–10 and Ex. A. If any expert opinion is necessary to resolve the issue presently before the court, Professor Priest seems to the court eminently qualified to provide it.

Professor Priest has recently completed a study of damage verdicts at the trial and appellate levels in Alabama from 1989 through 1996. His research disclosed a "very substantial upswing" in jury verdicts in 1993 and 1994, principally against foreign corporate defendants. Transcript of July 14, 1997 Hearing at 19.[2] His research demonstrates that the *average* trial court punitive damage award against an out-of-state insurance company, such as defendants in the case at bar, was $3,026,050. Priest Aff. at ¶ 16; Tr. at 22. On appeal, the average award sustained by the Alabama Supreme Court was $1,976,901. *Id.* Thus, as a purely statistical matter, if plaintiff is successful on her punitive damage claim in the case at bar, she could expect an award certainly in the seven-figure range, well in excess of the $75,000 minimum. In fact, we can presume that a combined compensatory and punitive damage award of less than $75,000 would be among the *lowest* of such awards in the past ten years.

Professor Priest was also asked to express his opinion as to the value of this particular case, based on his experience in studying Alabama civil damage awards assuming the material allegations of the complaint are proven true at trial. In his estimation, "the Plaintiff in this action has incorrectly evaluated the amount in controversy . . . ." Priest Aff. at ¶ 17. Particularly persuasive is the Professor's comparison of the allegations of the present complaint with the case of *Parham et al. v. Foremost Insurance Co.,* No. CV–94–44 (Circuit Court of Bullock County, Alabama). It is unnecessary to recite in any

**2.** For brevity, this document will hereafter be    cited as "Tr."

detail the facts of that case. It suffices to note Professor Priest's conclusion that the allegations of wrongdoing in the present case are "substantially more" nefarious[3] than those in the Parham/Massey lawsuit. Priest Aff. at 21; Tr. at 23. In that case, the trial court allowed nearly seven million dollars in punitive damages; the Alabama Supreme Court remitted that award to a mere $350,-000, still more than four times this court's jurisdictional threshold. *Foremost Ins. Co. v. Parham,* 693 So.2d 409 (Ala.1997); Priest Aff. at 23. This action, moreover, took place post-*BMW of North America, Inc. v. Gore, 517 U.S. 559,* 116 S.Ct. 1589, 134 L.Ed.2d 809.

#### b. Forrest S. Latta

Mr. Latta is and has been a member of the Alabama State Bar since 1983. He has been studying Alabama punitive damages for the past 11 years, and is the author of *Large Punitive Damage Verdicts in Alabama 1994–1995, Alabama Defense Lawyers Journal* 19 (Oct. 1996). Latta Aff. ¶¶ 1–4. In the course of forming his opinion on the present case, and in the course of his studies, he has examined the complaints, jury verdicts, and judgments in a large number of Alabama cases involving punitive damages. *Id.* at 9–15 and Ex. I, J. As such, the court deems him qualified to state an expert opinion as to the amount in controversy in this case. His opinion, based on appendices to his affidavit which constitute the majority of this court's record, is that the amount in controversy is "well in excess of $75,000." Latta Aff. ¶ 21.

This court concurs in his appraisal.

#### c. Exhibits 3 and 3A

Finally, defendants submit in opposition to plaintiff's motion to remand Exhibits 3 and 3A (Doc. 14).[4] Exhibit 3 consists of 13 separate complaints filed in various cases across Alabama against various foreign insurance corporations, asserting various forms of insurance fraud, breaches of contract, outrage, *et cetera,* each of which was prepared and filed by plaintiff Jackson's law firm and each of which names a nondiverse defendant. In none of these complaints does the ad damnum clause attempt to limit the damages sought to below $75,000. Quite to the contrary, the court notes that each complaint either (1) makes a demand for compensatory and punitive damages in an unspecified amount, or (2) makes a limited demand several orders of magnitude above $75,000.

The court is ever mindful of the Court of Appeals' admonition in *Burns* that the inquiry must remain focused on the question of the amount in controversy in the present case, and not on the subjective intent of plaintiff's counsel in drafting the prayer for relief. *Burns, supra,* at 1096. The court finds Exhibits 3 and 3A of little assistance to defendants' position, for while these exhibits are highly probative of counsel's subjective intent, and while these complaints state causes of action similar to those in the case at bar, the absence of jury verdicts and judgments in these cases negates any probative worth they might have as to the actual amount in controversy in the present action.

#### d. Conclusion

Based on the foregoing evidence adduced by the defendants, the court concludes that defendants have successfully carried their heavy burden of proving that more than $75,-000 is in controversy in the case at bar.

### III.

It is axiomatic that the defendants, as the parties seeking to invoke federal jurisdiction, bear the burden of proving each and every jurisdictional fact to this court. *Tapscott v. MS Dealer Service Corporation,* 77 F.3d

---

3. In fact, Professor Priest estimated the allegations in the present case to be in the seventy-fifth percentile of egregiousness among cases he has studied over the past ten years. Tr. at 24.

4. At the hearing in this matter held on July 14, 1997, the court indicated that these exhibits might be of assistance to its decision. See Tr. at 11, 12.

1353, 1356 (11th Cir.1996). Defendants have met that burden here. However, the court finds it appropriate to address several of plaintiff's arguments in support of remand.

Plaintiffs submit to the court a letter to defendants' counsel offering to settle this case for the sum of $70,000. Plt's Mot. To Remand, Ex. A. Plaintiffs argue that this letter proves that the amount in controversy is only $70,000. The court finds this offer to be of very little probative value in making its determination.

■ As an initial matter, it is not the settlement value of a case that determines whether the jurisdictional amount is in controversy. The appropriate measure is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint. *Burns, supra*, at 1096.

Even if the court were to consider the settlement offer probative evidence, however, it would not be particularly helpful to plaintiff's position, for as Judge Troutman has written:

> By definition, offers to settle a claim by plaintiffs involve their willingness to take less than the amount which they would expect to obtain by a jury verdict in order to secure immediate payment and avoid the inconvenience of litigation. It is impossible to determine, from a settlement demand, how much less than the objective value of a claim a party is willing to take to obtain immediate relief.

*McCartney v. Rosenblatt*, 1991 WL 129993 at *2 (E.D.Pa.1991).

If plaintiffs are willing to settle the case for the sum of $70,000, then it follows a *fortiori* that plaintiffs would expect to receive considerably more than $70,000 at trial. This is so, because the settlement offer is only economically rational on plaintiff's behalf if the true expected litigation value of the case is at least $70,000 plus the considerable costs of the discovery process and actually conducting the trial of the matter.[5] In summary, if the settlement offer is probative at all, it cuts deeply against the position advocated by the plaintiff and in favor of defendants. *See, e.g., Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22 (S.D.W.Va.1994).

Plaintiffs also submit for the court's consideration the opinion of District Judge Clemon in the case of *Earl Byrd v. American Bankers Insurance Company of Florida, et al.*, No. 96–PWG–3109–W (N.D.Ala.1997). Plt's Mot. To Remand, Ex. C. The complaint in that case was substantially identical to the complaint in the case at bar and is signed by the very same lawyer. Defendants removed the case to the United States District Court for the Northern District of Alabama. District Judge Clemon remanded the case and taxed costs against the defendants. This court is in no position to evaluate the persuasiveness of Judge Clemon's Memorandum Opinion, and therefore expresses no view in that regard, because the court does not have the entire record in *Byrd* before it. This court rules on its own record, and the record in the case at bar is substantially enlarged with evidence that may or may not have been before that court. As stated *supra*, the evidence in this case overwhelmingly supports defendants' argument that the jurisdictional amount is controverted.

Furthermore, plaintiffs' submission of the *Byrd* record adds additional credibility to defendants' argument that plaintiff's counsel has not engaged in the type of competent, good-faith case valuation which the *Burns* court had in its contemplation. The ad damnum clause in *Byrd* calls for "punitive and compensatory damages in the amount of Forty Five Thousand Dollars ($45,000.00)."[6] Yet, Byrd's complaint stated the very same four

---

5. Like the court in *Burns,* this court indulges plaintiff's counsel the presumption that he at all times acts in good faith, with reasonable skill and competence, and in his client's best interests. *See Burns,* 31 F.3d at 1095.

6. Byrd's complaint was filed on October 25, 1996, approximately two months prior to the effective date of the Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, 110 Stat. 3847,

common-law causes of action as Jackson's. The judicial mind must necessarily query: "Why did plaintiff's counsel evaluate Byrd's case, commenced October 10 1996, at only $45,000, but evaluate Jackson's, commenced on or about March 31, 1997, at $70,000?" The answer seems to this court abundantly clear. Plaintiff's counsel has not made an attempt to estimate the true value of Ms. Jackson's case in the ad damnum clause. On the contrary, counsel selected the amount in the ad damnum for the sole purpose of manipulating the decisions of the Court of Appeals to avoid federal jurisdiction. Artifices such as this reflect a lack of respect for the Court of Appeals and the various District Courts, and will not be countenanced by this court.[7]

Finally, plaintiffs have submitted to the court the testimony of George L. Priest in the case of *Barron v. Yamaha Corp. Of America*, Circuit Court of Coffee County, Alabama, No. CV-92-9. Plaintiffs submitted this transcript, consisting of seventy pages, without directing the court's attention to any particularly relevant content. *Cf.* Local Civil Rule 17(C). Nonetheless, the court has read the entire transcript. The court finds nothing in Mr. Priest's former testimony which lends any support to plaintiff's position.

### IV.

For the foregoing reasons, the court concludes that defendants have carried their heavy burden of proving "to a legal certainty" that more than $75,000 is in controversy in this case, despite plaintiff's ad damnum clause, which asks for judgment "not to exceed" $70,000. This court therefore possesses subject matter jurisdiction over this action pursuant to United States Code, Title 28, section 1332. Plaintiff's motion to remand (Doc. 4) is due to be and is now **DENIED.**

---

which raised the jurisdictional minimum of 28 U.S.C. § 1332 to its present level of $75,000.

**7.** The court reiterates that "counsel's subjective intent is not the true issue," *Burns, supra,* at 1096, and the court does not rest its holding on the subjective intent that clearly exists here. The point is, plaintiff's submission of the *Byrd* opinion is singularly unhelpful.