**Aslam SHAW, Aslam Shaw, as Trustee for Abid A. Shaw Trust, and Aslam Shaw, as Trustee for Farrah M. Shaw Trust, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**CHARLES SCHWAB & COMPANY, INCORPORATED, and Does 1 through 100, inclusive, Defendants.**

No.  CV 00–12349 CMAJWX.

United States District Court,
C.D. California,
Western Division.

Jan. 23, 2001.

Kevin J. Yourman, Behram V. Parekh, Weiss & Yourman, Los Angeles, CA, for Plaintiffs.

George M. Garvey, Malcolm A. Heinicke, Carolyn Hoecker Luedtke, Munger, Tolles & Olson LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

MORENO, District Judge.

Presently before the Court are Plaintiffs' motion to remand to state court and Defendant's motion to dismiss Plaintiffs' complaint. Having considered the parties' moving papers, materials submitted in support therewith, and oral argument, the Court *grants* Plaintiffs' motion. The Court's order renders Defendant's motion moot.

### I. *Facts*

Plaintiffs purport to represent a class of investors who used Defendant Charles Schwab's web site to conduct purchases and sales of stocks, options, and other securities. In particular, Plaintiffs allege, inter alia, that:

1) Despite claiming and contracting to charge a commission of $29.95 for the first 1000 shares purchased and $.03 for all shares purchased in excess of 1000, Defendant charged $.03 for all shares resulting in a $.05 overcharge per transaction;

2) Defendant has intentionally, negligently, or recklessly carried out automatic executions such that rather than immediately selling stock as requested by Plaintiffs, Defendant entered short-sell positions in Plaintiffs' accounts;

3) Defendant has intentionally, negligently, or recklessly carried out automatic executions such that single transactions based on automatic executions have been split without prior approval resulting in excessive transaction fees;

4) Defendant has intentionally, negligently, or recklessly maintained its trading price records so as to incorrectly price call options; and

5) Defendant has intentionally, negligently, or recklessly maintained its system so as to erroneously calculate accounts' option requirements.

Plaintiffs filed suit in California state court on October 18, 2000. Defendant promptly removed the action to this Court.

### II. *Legal Standard*

A case must be remanded to state court if the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Where jurisdiction is not premised on diversity and none of the claims asserted "arise under" federal law, the district court lacks subject matter jurisdiction and must remand the action to state court. *See International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 87, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). A motion to remand for lack of subject matter jurisdiction can be raised at any time before final judgment. 28 U.S.C. § 1447(c); Fed. R.Civ.P. 12(h)(3).

To determine whether a case arises under federal law for purposes of establishing federal question subject matter jurisdiction, courts apply the "well-pleaded complaint" rule, which allows a plaintiff to avoid federal jurisdiction by relying exclusively on state law. *Caterpillar Inc., v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Federal courts will only consider what necessarily appears in a plaintiff's statement of his or her claim, unaided by anything alleged in anticipation or avoidance of defenses the defendant may interpose. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (holding that even where defense is only question truly at issue, case raising federal patent law defense does not, for that reason alone, arise under patent law). In general, federal subject matter jurisdiction does not exist when the only federal question presented is raised as a defense, even where that defense alleges federal preemption of state law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–2848, 77 L.Ed.2d 420 (1983), *superseded by statute on other grounds as stated in, Ethridge v. Harbor*

*House Restaurant,* 861 F.2d 1389 (9th Cir. 1988).

However, certain federal laws completely preempt state law, creating an exception to the well-pleaded complaint rule. A federal statute's preemptive force may be so extraordinary that it is said to occupy the field of law, barring assertion of state law claims and permitting removal based on the preemptive effect of the federal statute. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425.

### III. *Analysis*

The central question before this Court is whether Congress, in enacting the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f), intended to preempt state law claims such as those presently brought by Plaintiffs.

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"). PSLRA sought to constrain plaintiffs' ability to bring securities class actions by, among other things, establishing heightened pleading requirements, staying discovery pending resolution of motions to dismiss, and imposing limits on recovery. 15 U.S.C. §§ 78u–4(b)(1), 78u–4(b)(3), 78u–4(e). In order to avoid these constraints, plaintiffs increasingly began filing securities actions in state court. In California, for example, the number of securities case filings in state court went up five-fold in the wake of PSLRA's passage. H.R. Conf. Rep. 105–803 (1998) 15.

Congress enacted SLUSA in 1998 in order to prevent class action plaintiffs from bypassing PSLRA by filing cases in state court. Towards that end, SLUSA provides that:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). Section 78bb(f)(2) provides that any covered class action brought in state court shall be removable. In other words, the statute's plain language evidences Congress' intent to preempt state law with regard to the kinds of claims described in 15 U.S.C. § 78bb(f)(1)(A) & (B). The question, then, is whether paragraphs A and B cover the Plaintiffs' action in the instant case.

SLUSA requires that the removing party demonstrate that: 1) the present class action is a "covered class action," 2) the class action complaint is based on state law claims, 3) there has been a purchase or sale of a "covered security," and 4) the alleged misfeasance was committed "in connection with the purchase or sale of a covered security." Presently, there is no dispute as to the first three issues.

■ Plaintiffs, however, contend that the Defendant's misfeasance was not "in connection with the purchase or sale of a covered security." There is very little case law interpreting 15 U.S.C. § 78bb(f). Section 78bb(f)'s language tracks that of Section 10(b) of the Securities Exchange Act of 1934 and its operating regulations.[1] As a consequence, courts have relied upon 10(b) case law in interpreting Section

---

1. Section 10(b) makes it unlawful to:

   To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary

   or appropriate in the public interest or for the protection of investors.
   15 U.S.C. § 78j(b). The operating regulations promulgated pursuant to Section 10(b) include a provision that reads very similarly to § 78bb(f)(1)(A):

   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or

78bb(f)'s "in connection with" language. *See Burns v. Prudential Securities,* 116 F.Supp.2d 917, 923 (N.D.Ohio 2000); *Abada v. Charles Schwab & Co., Inc.,* 68 F.Supp.2d 1160, 1166 (S.D.Cal.1999), *vacated by Abada v. Charles Schwab & Co., Inc.,* 99–CV–940 (S.D.Cal. Sept. 30.1999)(unpublished).

The Supreme Court has stated that courts are to read 10(b) flexibly. *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Section 10(b)'s purpose is broader than protecting "the integrity of the securities markets." *Id.* Congress' purpose in enacting the statute was to protect investors from false and misleading practices. *See Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 173, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

Misrepresenting the risks associated with the purchase of securities satisfies 10(b)'s "in connection with" requirement. *Arrington v. Merrill Lynch,* 651 F.2d 615, 619 (9th Cir.1981). Similarly, misrepresenting securities' value satisfies the "in connection with" requirement. *Ambassador Hotel Co. v. Wei–Chuan Investment,* 189 F.3d 1017, 1026 (9th Cir.1999). In *Ambassador Hotel,* the Ninth Circuit stated that in order to be "in connection with":

> the fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves. While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction.

*Id.* at 1025. The purported fraud should have some relation to the securities' "intrinsic nature." *In re Financial Corporation of America,* 796 F.2d 1126, 1130 (9th Cir.1986). In *In re Financial Corp.,* the Ninth Circuit further suggests that the existence of a causal nexus between the alleged fraud and the securities transaction goes far in satisfying Section 10(b)'s "in connection with" requirement. *Id.*

Based upon the Ninth Circuit's interpretations of Section 10(b), the Defendant urges this Court to stage a broad reading of Section 78bb(f)'s "in connection with" language. This Court, however, must embrace a hermeneutic of gingerliness. *See Medtronic v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (highlighting "the assumption that the historic police powers of the States were not to be superseded by [ ] Federal Act unless that was the clear and manifest purpose of Congress.")(citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447(1947)); *Charas v. Trans World Airlines,* 160 F.3d 1259, 1264 (9th Cir.1998)(noting "that preemption provisions are narrowly and strictly construed...."), *amended by,* 169 F.3d 594 (1999). Although Sections 10(b)⋅ and 78bb(f) may be phraseologically homologous, the Court cannot simply assume that the two statutes produce meaning in the same way. Different congressional intents gird the two statutes. This is apparent from an analysis of Section 78 bb(f)'s legislative history.

SLUSA's legislative history describes the statute's purpose as follows: "[T]o protect the interest of shareholders and employees of public companies that are the target of meritless 'strike' suits."[2] H.R.

---

of the mails or of any facility of any national securities exchange,

    (a) To employ any device, scheme, or artifice to defraud.

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10B–5.

**2.** Strike suits have been described as:

    Shareholder derivative actions begun with the hope of winning large attorney fees or private

Conf. Rep. 105–803 (1998) 13. Congress sought to make Federal courts the exclusive venue for most securities fraud class action litigation because:

> companies can not control where their securities are traded after an initial public offering. . . . As a result, companies with publicly-traded securities can not choose to avoid jurisdictions which present unreasonable litigation costs.

*Id.* at 15. It would appear that Congress was concerned about leaving hapless public companies to wade through bogs of onerous state law in jurisdictions where investors, by no choice of the companies, happened to buy the companies' securities. The legislative history does not indicate that Congress was especially worried about brokerage companies that have purposefully availed themselves of business opportunities in jurisdictions with onerous laws. That aside, it is readily apparent from SLUSA's legislative history that, unlike Section 10(b), its primary purpose is not to protect investors.

Given the congressional purpose girding SLUSA, a wholesale adoption of Section 10(b)'s "in connection with" requirement is unwarranted. The Court finds that the flexible reading dictated by the Supreme Court in the 10(b) context does not apply in the SLUSA context. Invoking 10(b) precedent to limit plaintiffs' remedies seems ironic at best. Although the Court accepts that Section 78bb(f)'s "in connection with" language means that the alleged misfeasance must relate to the securities' intrinsic nature, the Court refuses to read the requirement as broadly as it would be obliged to in the Section 10(b) context.

Presently, Plaintiffs' claims relate to Defendant's commission rate for web-based trading and the efficacy of Defendant's web-based trading system. The claims relate to the vehicle by which Schwab delivered securities rather than the securities themselves. Plaintiffs have not alleged any misrepresentations or other misfea-

sance that is intrinsically related to the securities being traded. The Plaintiffs do not allege that Defendant's fraud induced them to invest in particular securities. Rather, the Plaintiffs contend that Defendant's fraud induced them to select Defendant as their broker rather than some other brokerage firm. It would appear that Plaintiffs' suit lies more in the realm of consumer protection than securities litigation. Consequently, the Court finds that SLUSA does not preempt Plaintiffs' state law claims.

### Conclusion

For the reasons stated above, Plaintiff's motion to remand is *granted.*

IT IS SO ORDERED.

---

settlements, and with no intention of benefitting corporation on behalf of which suit it is theoretically brought.

Black's Law Dictionary, Revised 4th Ed. (1968).