Robert E. **RILEY**, Jr., et al., Plaintiffs,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,** et al., Defendants.

No.  8:00–CV–2335–T–30B.

United States District Court, M.D. Florida, Tampa Division.

Sept. 27, 2001.

---

44.  *See,* Doc. 9, Tab. A; *Burg & DiVosta,* 712    F.Supp. at 179.

Guy M. Burns, Jonathan S. Coleman, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, William J. Schifino, Jr., Brenda M. Combs, Williams, Schifino, Mangione & Steady, P.A., Tampa, FL, for Robert E. Riley, Jr., Sheila Cantrell, Gregory D. Dingle.

John Eamon Johnson, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, James N. Benedict, Clifford, Chance, Rogers & Wells, LLP, New York, NY, Joseph F. Donley, Swidler Berlin Shereff Friedman, LLP, New York, NY, Marvin E. Barkin, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, Michael L. Dagley, Bass, Berry & Sims PLC, Nashville, TN, Mark Holland, Christopher J. O'Rourke, Clifford, Chance, Rogers & Wells, LLP, New York, NY, for Merrill Lynch, Pierce, Fenner & Smith, Inc., Arthur Zeikle.

John Eamon Johnson, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, James N. Benedict, Clifford, Chance, Rogers & Wells, LLP, New York, NY, Joseph F. Donley, Andrew J. Levander, Swidler Berlin Shereff Friedman, LLP, New York, NY, Marvin E. Barkin, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, Michael L. Dagley, James H. Cheek, III, Matthew M. Curley, Bass, Berry & Sims PLC, Nashville, TN, Mark Holland, Christopher J. O'Rourke, Clifford, Chance, Rogers & Wells, LLP, New York, NY, for Merrill Lynch Growth Fund.

John Eamon Johnson, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, James N. Benedict, Clifford, Chance, Rogers & Wells, LLP, New York, NY, Joseph F. Donley, Swidler Berlin Shereff Friedman, LLP, New York, NY, Marvin E. Barkin, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, Michael L. Dagley, Bass, Berry & Sims PLC, Nashville, TN, for Merrill Lynch Assett Management, L.P.

John Eamon Johnson, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, James N. Benedict, Clifford, Chance, Rogers & Wells, LLP, New York, NY, Joseph F. Donley, Swidler Berlin Shereff Friedman, LLP, New York,

NY, Marvin E. Barkin, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, Michael L. Dagley, James H. Cheek, III, Bass, Berry & Sims PLC, Nashville, TN, for James H. Bodurtha, Herbert I. Londin, Robert R. Martin, Joseph L. May, Andre F. Perold.

## ORDER

MOODY, District Judge.

This cause is before the Court upon Defendant's Motion to Dismiss and supporting memorandum (Dkts. 4 & 5) and Plaintiff's response in opposition thereto (Dkt.# 21).

## I.  PROCEDURAL HISTORY

The Plaintiffs in *Riley, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.,* Case No. 8:00–CV–2335–T–30TGW ("Riley I") originally filed a class action alleging that Defendants violated two Florida statutes, the Florida Securities and Investor Protection Act, Fla.Stat. §§ 517.011, *et seq.,* and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.,* by misrepresenting and omitting material facts concerning the Merrill Lynch Growth Fund to induce Plaintiffs to invest.

After the case was filed, Defendants moved to dismiss Plaintiffs' claims arguing that the 1998 Securities Litigation Uniform Standards Act ("SLUSA") barred Plaintiffs from maintaining their claims. Defendants also argued that dismissal was appropriate because the Complaint failed to adequately allege diversity jurisdiction.

While Defendants' Motion to Dismiss was pending, the Court began its initial jurisdictional review of the case. As part of the jurisdictional review, the Court *sua sponte* entered an Order requiring the Plaintiffs to show cause why diversity jurisdiction was appropriate. The Plaintiffs responded to the show cause Order and contemporaneously filed a Notice of Voluntary Dismissal Without Prejudice as to the claims relating to Performance Toyota, Inc. 401(k) Profit Sharing Plan ("Performance Plan"). Plaintiffs' response to the show cause Order explained that the claims relating to the Performance Plan were being dismissed because they may not meet the amount in controversy requirement and therefore federal jurisdiction was not appropriate on those claims. After voluntarily dismissing the claims relating to the Performance Plan, Plaintiffs re-filed the identical claims in state court ("Riley II"). The Defendants then removed Riley II from state court back to federal court pursuant to the removal provision of SLUSA and the case was assigned Case No. 8:01–CV–779–T–30TGW.

Upon removal, Riley II was assigned to the Honorable Richard Lazzara, who subsequently filed a Notice of Recusal. Riley II was reassigned to this division pursuant to standard reassignment procedures. As a result, both Riley I and Riley II are now before the Court. The Plaintiffs in Riley II filed a Motion to Remand the case back to state court. This Court denied the Motion to Remand and consolidated the two cases. Pursuant to 28 U.S.C. § 2403(a), the Court certified to the Attorney General the fact that these cases involve issues concerning the constitutionality of an Act of Congress affecting the public interest. The Attorney General declined to intervene.

It is noted that the two original cases present substantially the same arguments and defenses. The Court's legal analysis below extends fully to the issues raised in both original Riley actions, which are now consolidated before this Court.

## II.  LEGAL DISCUSSION

The Plaintiff argues that application of SLUSA would be unconstitutional in this case because SLUSA can not constitution-

ally bar an action grounded entirely in state law. SLUSA provides, in relevant part, as follows:

(f) Limitations on remedies

(1) Class action limitations: No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(A) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security. 15 U.S.C. § 78bb(f); 15 U.S.C. § 77p(b).

This Court has already determined that the issues raised in both Riley I and Riley II fall within the definition of a "covered class action" under the terms of SLUSA (Order Denying Motion to Remand and Consolidating Cases, Dkt. # 41 ). It now must determine if the application of SLUSA preempts the relevant state laws, and if the application of SLUSA to the state law claims in this case reaches beyond Congress' power to regulate commerce and is, therefore, unconstitutional.

## A. DOES SLUSA PROHIBIT THE PLAINTIFFS FROM PROCEEDING WITH THEIR STATE LAW CLAIMS

■ It is well established that federal law may preempt state law in three ways. First, Congress may define the extent to which it intends to preempt state law. *Michigan Canners and Freezers Ass'n. Inc. v. Agricultural Marketing and Bargaining Bd.* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) Second, Congress may indicate an intent to occupy an entire field of regulation. *Id.* Third,

Congress may preempt a state law which conflicts with federal law. *Id.* Such a conflict may be express, or it may arise when a state law stands as an obstacle to the accomplishment of the purpose and objective of Congress in enacting legislation. *Id.*

The Court accepts Plaintiff's proposition that Congress has not evidenced an intent to occupy the entire field of securities regulation. However, the Court finds that Congress has, through SLUSA, preempted a portion of Florida State Law. Namely, Congress has preempted state law to the extent that it provides an avenue for recovery for a "covered class action" through the state courts. Congress clearly states the intended purpose of SLUSA:

The Congress finds that—(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits; (2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts; (3) this shift has prevented that Act from fully achieving its objectives; *2(4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and (5) *in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.*

H.R.CONF.REP. 105–803, *2 (emphasis added)

It is clear that Congress, by enacting SLUSA, intended to prevent exactly the kind of action which is now before the Court. This Court finds the subject matter of this litigation to be in direct conflict with the provisions of SLUSA prohibiting the pursuit of "covered class actions" in state or federal court. 15 U.S.C.A. § 78bb(f).

The Court acknowledges the case of *Green v. Fund Asset Management, L.P.*, 245 F.3d 214 (3d Cir. March 16, 2001), which was provided by Plaintiffs as supplemental authority. Plaintiff directs the Court to the language, "It is well settled that federal law does not enjoy complete preemptive force in the field of securities; state securities laws exist in every state, the District of Columbia, and Puerto Rico, and 'far from preempting the field,' congress has expressly reserved the role of states in securities regulation." *Id.* at note 7. This language does not alter the application of SLUSA in this case.

As is clear by the language of the House Report, SLUSA does not attempt to preempt all state law in the field of securities. H.R.CONF.REP. 105–803, *infra.* Rather, SLUSA bars a specific form of action based on a specific set of facts, namely a class action arising under the enumerated circumstances described in SLUSA. *Id.* The operative language in SLUSA poses no bar to pursuit of individual actions regarding securities in state courts, or to class actions which fall outside of the limitations of 15 U.S.C.A. § 78bb(f).

Additionally, the facts of *Green* are materially different than those presented in this case. The Defendants in *Green* asserted that the state law claim of breach of fiduciary duty should be barred because of "conflict preemption," *Green*, 245 F.3d at 222. The Court analyzes the legislative history of the federal law and the applicable Senate Report, finding that Defendants did not demonstrate that Congress intended to eliminate common law access to the remedies in question. *Id.* at 226. To the contrary, Congress' stated purpose in enacting SLUSA was to bar class actions of the exact nature of that in the instant case arising under state or federal laws. H.R.CONF.REP. 105–803, *infra.* If this Court utilizes the same analytical framework presented in *Green*, a quite different result is obtained.

Since the facts in *Green* are materially different than those before the Court in the instant case, the Court is not bound by the decision of the Third Circuit. The Court is persuaded by the decision of the district court in *Hines v. ESC Strategic Funds, Inc.*, et al., 1999 WL 1705503 (M.D. Tennessee 1999), which addressed facts similar to those in the instant case. Among other things, the defendants in *ESC Strategic* sought to have the Plaintiff's state law claims dismissed, contending they were barred by SLUSA. *Id.* at 3. With regard to the Plaintiff's claims under state securities fraud law, the court states:

> Plaintiff further alleges that "Defendants also made or caused to be made statements which at the time and in light of the circumstances under which they were made were false and misleading with respect to material facts as set forth herein, in violation of T.C.A. ¶¶ 48–2–121(c)." (First Amended Complaint at ¶¶ 31) Clearly, this claim is preempted under the Uniform Standards Act because the claim is based on allegations of untrue statements, omissions of material facts, and manipulative or deceptive devices. This claim is dismissed with prejudice. *Id.* at 5.

While the Court is not bound by the decision of the District Court in *ESC Strategic*, it finds the court's analysis both persuasive and applicable in the instant case.

Plaintiffs also argue that, since the Florida Statutes in question do not contain a "scienter" requirement, SLUSA should not preempt. The Court has already addressed Plaintiff's arguments regarding "scienter" and preemption by SLUSA in the Order Denying Motion to Remand and Consolidating Cases. (Dkt.# 41). The Court previously found that the action in this case is properly considered a "covered class action" under SLUSA, stating: "Plaintiffs' claims in Riley II are brought pursuant to statutory law and allege misrepresentations or omissions of material fact in connection with the purchases and sales of fund shares." (Order Denying Motion to Remand and Consolidating Cases, Dkt. # 41)

Plaintiff next argues that Florida is able to enact regulations that are more strict than Federal standards. The Court agrees with Plaintiff's argument that, as a principal, a state may enact a more restrictive statute than that imposed by federal law. However, this theory is misapplied in the instant case. Preemption in this case alters the remedy and forum of the would-be class; it does not eradicate the state statute altogether. The state statute, be it more restrictive or not, is still fully operational as it applies to individual plaintiffs. Plaintiffs suggest that to prohibit class actions but allow individual actions regarding this subject matter would "turn logic on its head." The Court rejects this argument. Instead, it appears that Congress' intent was to do exactly that; to allow individuals to pursue claims under state or federal law, but to limit covered class actions to the remedies provided through federal securities regulations.

In the alternative, the Plaintiffs argue that SLUSA impermissibly infringes upon the Supreme Court's rule making authority. Specifically, the Plaintiff asserts that class action litigation is governed by Fed. R.Civ.P. 23, and that SLUSA must be interpreted so as to avoid any repeal by implication of Rule 23. Plaintiff quotes the following language from the Rules Enabling Act:

(a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure under section 2072 of this title. 28 U.S.C. § 2071.

The Court is unpersuaded by the proposition that applying SLUSA to the instant case would run contrary to the provisions of the Rules Enabling Act. Even the language cited by Plaintiffs makes clear that the courts must conform their rules to the Acts of Congress, not vice versa. Further, SLUSA does not eliminate the vehicle of the class action lawsuit from the American legal system; it applies a limitation on use of the class action in connection with the specific category of actions enumerated within the Act.

## B. IS SLUSA CONSTITUTIONAL AS APPLIED IN THIS CASE

█ It is undisputed that Congress possesses the authority to regulate interstate commerce. *Constitution of the United States,* Section 8, Clause 3. Plaintiffs argue that the claims raised in this case arise under Florida law and do not implicate interstate commerce. As such, Plaintiffs assert that application of SLUSA to the actions in this case would be an unconstitutional exercise of congressional authority to regulate interstate commerce. However, this approach fails to consider the broader context of the case at bar.

While the plaintiffs are residents of Florida, elected to participate in the subject plans in Florida, received status updates and reports in Florida, and filed suit under Florida law, these facts alone do not obscure the interstate nature of the underlying transactions. It is undisputed that

the subject of this litigation are 401K investment funds, each composed of nationally traded securities. The assertion that the fraudulent or deceptive promotion and sales of nationally traded securities is outside the reach of the commerce clause is without merit. Additionally, it is undisputed that the Defendant's principal place of business and the residences of the Fund's trustees are all outside of the state of Florida, the trust itself was administered from outside of Florida, and yet defendants were actively recruiting Fund participants in Florida.

The Supreme Court has held that the existence of some intrastate activity does not prelude exercise of the clause's regulatory provisions, where the principal business of the entity in question is of an interstate nature:

> But so far as the commerce clause alone is concerned Congress has plenary power, a power which "extends to every part of interstate commerce, and to every instrumentality or agency by which it is carried on; and the full control by Congress of the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations." The Minnesota Rate Cases (*Simpson v. Shepard*), supra, 230 U.S. at page 399, 33 S.Ct. at page 739, 57 L.Ed. 1511, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18.
>
> *North Am. Co. v. Securities and Exchange Commission* 327 U.S. 686, *705, 66 S.Ct. 785, 796, 90 L.Ed. 945 (1946)

Although the Plaintiffs wish to avoid preclusion by SLUSA, it is clear that both the securities in question and the defendant in this action are entrenched in interstate commerce. The mere existence of some intrastate activity does not move this action beyond the reach of interstate commerce regulation by Congress. Although

Plaintiff are residents of Florida and brought claims under Florida law, the foundation of this action and the activities giving rise to the action are interstate in nature.

## C. DIVERSITY JURISDICTION

■ The Court has also considered the parties' arguments concerning diversity jurisdiction in this case. Defendant, Merrill Lynch Growth Fund, is a Massachusetts business trust. Defendants assert that the citizenship of a business trust is the citizenship of all of the shareholders of the trust. Plaintiffs, on the other hand, argue that the Fund has the capacity to sue and be sued under the law of the state of its' organization, and should be treated as a corporation for diversity purposes.

In support of their position, Plaintiffs cite the law of Massachusetts, which state that a business trust "while not a corporation is a separate legal entity for the purpose of being sued." Chapter 182, Annotated Laws of Massachusetts. Plaintiffs argue that the case of *Carden v. Arkoma Associates*, 494 U.S. 185, *189, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), is distinguishable from the case at bar. Specifically, Plaintiff asserts that the two cases are not comparable because *Arkoma* deals with diversity jurisdiction as it applies to a limited partnership, not a business trust. However, the Court in *Arkoma* directly addresses the treatment of all entities not incorporated with regard to diversity jurisdiction:

> While the rule regarding the treatment of corporations as "citizens" has become firmly established, we have (with an exception to be discussed presently) just as firmly resisted extending that treatment to other entities. *Id.* at 1018[1]

The Court goes on to address the very argument which Plaintiffs assert entitles them to a finding of diversity jurisdiction:

---

1. The "exception" referenced by the Court

relates to an entity under the civil law of

Similarly, in *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900), we held that a "limited partnership association"—although possessing "some of the characteristics of a corporation" and deemed a "citizen" by the law creating it—may not be deemed a "citizen" under the jurisdictional rule established for corporations. *Id.,* at 456, 20 S.Ct., at 693. "That rule must not be extended." *Id.,* at 457, 20 S.Ct., at 693. As recently as 1965, our unanimous opinion in *Steelworkers v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 reiterated that "the doctrinal wall of *Chapman v. Barney,*" *id.,* 382 U.S., at 151, 86 S.Ct., at 275, would not be breached. *Id.*

The Court clearly states that the status given to corporations with regard to diversity jurisdiction is to be extended to no other entities, without regard to the status afforded to such entities in the states from which they originate.

The Court finds *Arkoma* applicable and controlling of the case at bar. Diversity must be based on the citizenship of the shareholders of the trust. It is undisputed that some of the shareholders are residents of Florida. Therefore, complete diversity does not exist. Since the Court finds that complete diversity does not exist, it is not necessary to resolve the dispute regarding adequacy of the amount in controversy for jurisdictional purposes.[2]

## D. CONCLUSION

As expressed in detail above, this Court finds that application of SLUSA in this case is a constitutional exercise of congressional authority to regulate interstate commerce. The Court previously found that this action fell within the definition of "covered class action" as set forth under SLUSA. The class action is subject to the provisions of SLUSA, which clearly state that such a cause of action shall not be heard in any state or federal court. Furthermore, the Court finds that diversity jurisdiction is not appropriate in this case. The class action claim is dismissed based on 15 U.S.C.A. § 78bb(f), leaving the parties with individual actions and no basis for federal jurisdiction. As a result, the Court finds the parties are not properly before this Court.

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss (Dkt.# 4) is **GRANTED.** The clerk is directed to close this file.

Puerto Rico, known as a *socieded en comandita. Id.* at 190, 110 S.Ct. 1015. The exception has no bearing on the issues presented in this case.

**2.** The Court acknowledges the circuit split regarding the relationship between 28 U.S.C. § 1367 and the Supreme Court's holding in *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, (1973). Since the Court has found this action to be improperly before the Court for independent jurisdictional reasons, it is not necessary for the Court to interpret the conflicting precedent regarding the amount in controversy at this time.