The **KENNETH ROTHSCHILD TRUST,** on behalf of itself and all others similarly situated and as a private attorney general on behalf of the members of the general public residing within the State of California, Plaintiff,

v.

**MORGAN STANLEY DEAN WITTER,** and Does 1 through 20, inclusive Defendants.

No. CV0110816MMMMANX.

United States District Court, C.D. California.

March 27, 2002.

---

Mike M. Arias, Arias Ozzello & Gignac, Los Angeles, CA, J. Paul Gignac, Arias Ozello Gignac, Santa Barbara, CA, for Plaintiff.

C. Robert Boldt, Heiko Kai Schultz, Rick Lloyd Richmond, Kirkland & Ellis, Los Angeles, CA, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTIONS TO REMAND ACTION TO STATE COURT AND TO STRIKE DECLARATION OF SIMON FARAHDEL, AND GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

MORROW, District Judge.

On December 14, 2002, defendant Morgan Stanley Dean Witter removed this putative class action to federal court, asserting that it falls both within the court's federal question and diversity jurisdiction. The complaint alleges that Morgan Stanley defrauded its clients by misrepresenting the interest to be paid on funds deposited with it for the purchase of certificates of deposit to be issued by a separate financial institution, South Shore Bank. Morgan Stanley contends that plaintiff's state law claims are preempted by the Securities Litigation Uniform Standards Act. Morgan Stanley also asserts that the matter falls within the court's diversity jurisdiction, as plaintiff is a citizen of California, it is a

citizen of New York and Delaware, and the matter in controversy exceeds $75,000.

Plaintiff has now moved to remand, asserting that the suit is not covered by the federal act, and that the complaint does not allege damages satisfying the minimum threshold for diversity jurisdiction. Morgan Stanley has filed a motion to dismiss, asserting that plaintiff's state law claims are preempted by federal law. Because the complaint involves, at least in part, the purchase of a "covered security," the court denies the motion to remand and grants Morgan Stanley's motion to dismiss.

## I. FACTUAL BACKGROUND

On November 1, 2001, plaintiff Kenneth Rothschild Trust filed a class action complaint against defendant Morgan Stanley Dean Witter. Plaintiff, which sues on its behalf, on behalf of all others similarly situated, and on behalf of the general public, alleges violations of California Business and Professions Code §§ 17200 et seq., California Civil Code §§ 1750 et seq., common law fraudulent nondisclosure, negligent misrepresentation, and breach of contract. The complaint seeks restitution, injunctive and declaratory relief.[1] Plaintiff sues on behalf of a putative class of individuals and entities that purchased Certificates of Deposit ("CDs") from Morgan Stanley during the last four years.[2]

The complaint alleges that Mary Thomas, a Morgan Stanley representative, contacted Kenneth Rothschild, trustee of the Kenneth Rothschild Trust, and offered him the opportunity to purchase a CD through Morgan Stanley.[3] After determining that Morgan Stanley's CDs offered a favorable rate of return, Rothschild purportedly decided to invest $85,000 in CDs on behalf of the Trust.[4] The complaint alleges that there is a 10–day "settlement period" between the deposit with Morgan Stanley of the funds that will be used to purchase a CD and the purchase itself. During this period, Morgan Stanley allegedly represents that the funds will be deposited in a money market account and will earn interest at a "money market rate."[5] In the case of the Trust, Rothschild purchased the shares of a money market mutual fund known as the Morgan Stanley Dean Witter Liquid Asset Fund.[6] Plaintiff asserts that, contrary to Morgan Stanley's representations, interest was initially paid for only three of the ten days of the "settlement period."[7] After Rothschild complained, Morgan Stanley agreed to credit the Trust's account for an additional two days of interest.[8] It refused to pay an additional five days' interest, amounting to $70.[9]

Plaintiff's complaint asserts claims on behalf of putative class members for misrepresentations regarding the interest to be paid on funds during the "settlement period," including failure to inform CD purchasers that the funds may not be credited to their accounts until the day following deposit, that interest does not begin to accrue until the first business day

---

1. *Id.*

2. *Id.,* ¶ 19.

3. *Id.,* ¶ 12.

4. *Id.,* ¶ 13.

5. *Id.,* ¶ 15.

6. Defendant's Opposition to Plaintiff's Motion to Remand ("Def's Opp.") at 10:16–17; Declaration of Simon S. Farahdel in support of

Defendant's Opposition ("Farahdel Decl."), ¶ 8; Ex. B (Account Record of Rothschild Trust).

7. Complaint, ¶ 16.

8. *Id.,* ¶¶ 17, 18.

9. *Id.,* ¶ 18.

after deposit, and that no interest is paid between the date of redemption and the date the CD is purchased.[10]

On December 14, 2001, Morgan Stanley removed the action to this court, asserting that the court had jurisdiction under both 28 U.S.C. §§ 1331 and 1332.[11] Specifically, Morgan Stanley asserts that the court has federal question jurisdiction under the Securities Litigation Uniform Standards Act, which states that "any covered class action brought in any State court involving a covered security ... shall be removable." 15 U.S.C. § 77p(c). Further, it asserts that the action is between citizens of different states and that the amount in controversy exceeds $75,000. On January 16, 2002, plaintiff filed a motion to remand the action to state court. On February 5, 2002, Morgan Stanley responded with a motion to dismiss, asserting that plaintiff's state law claims are preempted by federal law.

## II. DISCUSSION

### A. Motion to Remand: Federal Question Jurisdiction

### 1. Standard Governing Removal Under The Securities Litigation Uniform Standards Act

Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to ensure that litigants do not circumvent the limitations of the Private Securities Litigation Reform Act by filing their securities actions in state court. See *Bertram v. Terayon Communications Systems, Inc.*, No. CV 00–12653 SVW (RZx),

2001 WL 514358, * 1(C.D.Cal. Mar. 27, 2001). See also *Gibson v. PS Group Holdings, Inc.*, No. 00–CV–0372 W(RBB), 2000 WL 777818, * 2 (S.D.Cal. June 14, 2000) ("Congress determined that class action attorneys were attempting to circumvent the Reform Act's requirements by filing frivolous securities lawsuits in state court and under state law, rendering virtually all of the Reform Act's protections inapplicable"). For this reason, SLUSA preempts many state class action securities claims. See *Green v. Ameritrade*, 279 F.3d 590, 595 (8th Cir.2002) ("With some exceptions, SLUSA made the federal courts the exclusive fora for most class actions involving the purchase and sale of securities"). Pursuant to 15 U.S.C. § 77p(c),

> "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)."[12]

Thus, SLUSA "obligates the removing party to prove that: 1) the class action sought to be removed is a 'covered class action,' 2) the class action complaint is based on state law claims, 3) there has been a purchase or sale of a 'covered security,' and 4) in connection with that purchase or sale, plaintiffs allege that defendants either 'misrepresented or omitted a material fact' or 'used or employed any manipulative or deceptive device or other contrivance.'" *Shaev v. Claflin*, No. C 01–0009 MJJ, 2001 WL 548567 * 3 (N.D.Cal.

---

**10.** *Id.*, ¶ 24. The putative class includes all persons who, within the last four years, deposited funds with Morgan Stanley for the purpose of purchasing a CD and were not paid interest for each day of the settlement period. (Complaint, ¶ 19)

**11.** Notice of Removal of Action Under 28 U.S.C. § 1441(a) ("Notice of Removal"), ¶ 3.

**12.** 15 U.S.C. § 77p(b) in turn provides that no covered class action based on state law may be maintained alleging misrepresentation or fraud in connection with a "covered security," a provision that will become significant in the discussion of defendant's motion to dismiss.

May 17, 2001)(quoting *Burns v. Prudential Securities,* 116 F.Supp.2d 917, 921 (N.D.Ohio 2000); see also *Bertram, supra,* 2001 WL 514358 at * 2; *Gibson, supra,* 2000 WL 777818 at * 3.

In the present case, three of these requirements are clearly met on the face of the complaint. This is a putative class action that pleads state law causes of action.[13] Those causes of action in turn allege that defendants made fraudulent and deceptive statements.[14] The fourth requirement—whether plaintiff's claim arises in connection with the purchase or sale of a "covered security"—is thus the key in determining whether this action was properly removed under SLUSA.[15]

### B. Whether Plaintiff's Claim Arises In Connection With A Covered Security

Section 77b(a)(1) of the Securities Act of 1933 defines a security as

"any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, reorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of

deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." 15 U.S.C. § 77b(a)(1).

Section 77p(f) defines "covered security" for purposes of SLUSA by reference to sections 77r(b)(1) and (2). These sections define "covered security" as one (1) listed on a national securities exchange, *or* (2) one "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(1), (2).

Plaintiff contends that the CDs purchased by the trust are not "securities," much less "covered securities," and it appears that Morgan Stanley concedes this point. The case law confirms that certificates of deposit, of the type at issue here, are not considered "securities" as that term is used in the Securities Acts. In *Marine Bank v. Weaver,* 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982), the Supreme Court held that certificates of deposit issued by a federally insured domes-

---

**13.** In relevant part, the term "covered class action" is defined in statute as

"(i) any single lawsuit in which-

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis

on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members...." See 15 U.S.C. § 77p(f)(2)(A).

**14.** Complaint, ¶ 1.

**15.** See Plaintiff's Motion to Remand ("Pl's Mot.") at 3:16–18.

tic bank were not securities under the Securities Exchange Act of 1934[16] because federal regulation of banks "virtually guaranteed" that the holder of the deposit would be repaid in full, while the holder of a debt instrument defined as a security "assumes the risk of the borrower's insolvency." *Id.* at 558–59, 102 S.Ct. 1220. Furthermore, the complaint contains no allegation that the CDs at issue here are traded on a "national securities exchange" as required by § 77(p)(F)(3). Thus, even if they were "securities," they would not qualify as "covered" securities for SLUSA purposes. This does not end the court's inquiry, however, as defendants assert that plaintiff's claims do not relate to the purchase or sale of the CDs, but rather to the transaction involving the money market fund.

■ The complaint alleges that Morgan Stanley has engaged in unfair and deceptive business practices by failing to pay interest on deposited funds between the date the funds are deposited and the date they are used to purchase a CD. It asserts that Morgan Stanley misrepresents to consumers that it will pay a money market rate on the funds during this settlement period, when in fact it does not credit the funds to customers' accounts until the next business day following deposit, does not pay interest until the first business day after deposit, and does not pay interest between the day of redemption and the date of purchase of the CD.[17] Allegations regarding plaintiff's personal account indicate that the Trust's funds were deposited into, and Morgan Stanley allegedly made misrepresentations concerning, a money market mutual fund.[18] The dispute thus arises in connection with the purchase and sale of the mutual fund shares.

Morgan Stanley contends that the mutual fund shares are covered securities, that plaintiff's claims therefore "concern a covered security," and thus that they fall within the ambit of SLUSA. The mutual fund meets the definition of a "security" provided in the statute because, as stated in the prospectus, it is a "portfolio of securities," i.e., a "group or index of securities" as referenced in the statutory definition.[19] See, e.g., *Pegasus Fund Inc. v. Laraneta*, 617 F.2d 1335, 1336 (9th Cir.1980) (describing in detail the assets of three mutual funds). Morgan Stanley also presents evidence that the mutual fund is a "covered security," because it is registered under the Investment Company Act of

---

**16.** The definition of a security under the 1934 Act is the same as that under the Securities Act of 1933. See *Weaver, supra,* 455 U.S. at 555, n. 3, 102 S.Ct. 1220; *Wolf v. Banco Nacional de Mexico,* 739 F.2d 1458, 1461 (9th Cir.1984).

**17.** Complaint, ¶ 24.

**18.** *Id.,* ¶¶ 15–18. The funds were used to purchase shares in the Morgan Stanley Dean Witter Liquid Asset Fund, Inc. (Def's Opp. at 10:16–17; Farahdel Decl., ¶ 8; Ex. B).

**19.** See Farahdel Decl., Ex. C (Fund Prospectus) at 31. The court may look beyond the allegations of the complaint in evaluating whether the state law claims are removable under SLUSA. See, e.g., *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (to determine whether it has subject matter jurisdiction, a court may consider and weigh extrinsic evidence, and where necessary, resolve factual disputes); *Del Real v. Healthsouth Corporation,* 171 F.Supp.2d 1041, 1043 (D.Ariz.2001) (considering extrinsic evidence in ruling on a motion to remand); *Gibson v. PS Group Holdings, Inc.,* No. 00–CV–0372 W(RBB), 2000 WL 777818 *4 (S.D.Cal. June 14, 2000); see also W. Schwarzer, W. Tashima and J. Wagstaffe, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 2:1093 ("Plaintiff's motion for remand effectively forces defendant ... to prove whatever is necessary to support the petition: e.g., ... the federal nature of the claim"). The court accordingly denies plaintiff's motion to strike the Farahdel declaration, as it was properly submitted as part of the defendant's opposition to plaintiff's motion to remand.

1940.[20] Plaintiff does not dispute this fact. Rather, it contends that Morgan Stanley has not demonstrated that the fund is traded on a national stock exchange, and thus that it has not met its burden of showing that the fund is a covered security under SLUSA.

The definition of covered security, however, is written in disjunctive form, meaning that the security need only be traded on a national exchange *or* be issued by a registered investment company, not both. 15 U.S.C. § 77r(b)(1), (2). See also *Burns v. Prudential Securities,* 116 F.Supp.2d 917, 922 (N.D.Ohio 2000) (finding that mutual funds managed by registered investment companies were covered securities because documentation submitted to the court confirmed that the investment companies at issue were registered under the Investment Company Act of 1940); *In re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation,* 105 F.Supp.2d 1037, 1040 (D.Minn.2000) ("SLUSA defines 'covered securities' by referencing § 18(b) of the Securities Act of 1933 ('the '33 Act'). That section was added to the '33 Act in 1996 by the National Securities Markets Improvement Act of 1996 ('NSMIA'), Pub.L. No. 104–290. The NSMIA defines 'covered securities' as either registered securities listed on national exchanges *or* securities issues by 'an investment company that is registered [ . . . ] under the Investment Company Act of 1940.' 15 U.S.C. § 77r(b)(1) and (2)" (emphasis added)). Because Morgan Stanley has provided ample, undisputed evidence that the mutual fund is a security issued by a registered investment company, the court finds that it has met its burden of demonstrating that the shares of the Morgan Stanley Liquid Asset Fund purchased with plaintiff's deposited funds are "covered securities" within the purview of SLUSA.

■ It thus appears that the fourth prerequisite to removal under SLUSA—that plaintiff's claims arise in connection with the purchase or sale of "covered securities"—is satisfied.[21] Because the court finds that the shares of the money market mutual fund are "covered securities," it concludes that removal was proper under 15 U.S.C. § 77p(c), and denies plaintiff's motion to remand.

### C. Motion To Remand: Diversity Jurisdiction

### 1. Standards Governing Diversity Jurisdiction And The Amount In Controversy Requirement

■ In addition to relying on SLUSA, Morgan Stanley asserts in its notice of removal that the court has jurisdiction over this action on the basis of diversity of citizenship.[22] See 28 U.S.C. § 1441(a). Diversity jurisdiction, including the amount in controversy, is determined at the instant of removal.[23] See *In the Mat-*

---

**20.** Farahdel Decl., ¶ 8; Ex. D (Registration Statement).

**21.** The fact that plaintiff's claims may tangentially relate to non-securities, i.e., the certificates of deposit—does not alter this result. When a claim concerns a transaction that involves both covered and non-covered securities as alleged, the entire claim is subject to removal under SLUSA. See, e.g., *Lasley v. New England Variable Life Ins. Co.,* 126 F.Supp.2d 1236, 1238–39 (N.D. Cal.1999) (holding that a complaint which alleged fraud in connection with the purchase of variable life insurance (a covered security) and ordinary life insurance (a non-security) was removable under SLUSA).

**22.** District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a).

**23.** There is no doubt that there is complete diversity of citizenship between all parties in the present case. Defendant Morgan Stanley is a citizen of Delaware and New York, and plaintiff Trust is a citizen of California. See

*ter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992). In measuring the amount in controversy, a court must "assum[e] that the allegations of the complaint are true and assum[e that] a jury [will] return[ ] a verdict for the plaintiff on all claims made in the complaint." *Jackson v. American Bankers Ins. Co. of Florida*, 976 F.Supp. 1450, 1454 (S.D.Ala.1997). See also *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir.1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"). Cf. *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir.1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").

■■■ Where a plaintiff's complaint does not specify the amount of damages being sought, the removing defendant bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy requirement is satisfied. See *Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 376 (9th Cir.1997); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992). This burden can easily be met if it is facially apparent from the allegations in the complaint that plaintiff's claims exceed $75,000. See *Easley v. Pace Concerts, Inc.*, No. CIV. A. 98–2220, 1999 WL 649632, * 3 (E.D.La. Aug. 25, 1999). If the amount in controversy is not clear on the face of the complaint, however, defendant must do more than point to a state law that might allow recovery above the jurisdictional minimum. Rather, the "defendant must submit 'summary-judgment-type evidence' to establish that the actual amount in controversy exceeds $75,000." *Id.; Singer, supra*, 116 F.3d at 377. If defendant presents such proof, it then becomes plaintiff's burden to show, as

a matter of law, that it is certain he will not recover the jurisdictional amount. See *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir.1995).

**2. Aggregating Class Damage Claims**

The Ninth Circuit has held that claims can be aggregated for purposes of satisfying the amount in controversy requirement only when they "derive from rights which [the plaintiffs] hold in group status." *Potrero Hill Community Action Comm. v. Housing Authority*, 410 F.2d 974, 978 (9th Cir.1969). In *Potrero*, the court determined that each plaintiff's rights arose from a separate contract between that plaintiff and the Housing Authority. *Id.* Thus, it held that the rights were individual rather than common and undivided. *Id.* Compare *Eagle v. American Telephone and Telegraph Co.*, 769 F.2d 541, 544 (9th Cir.1985) (minority shareholders' claims against a majority shareholder for breach of fiduciary duty were common and undivided because they "derive[d] entirely from an alleged injury to the corporation").

■■■ In *Kanter v. Warner–Lambert Co.*, 265 F.3d 853 (9th Cir.2001), plaintiffs brought a products liability class action against the manufacturers of head lice remedies. *Id.* at 855. The court determined that the claims could not be aggregated because each member of the class had individually purchased the head lice medication, and had suffered actual monetary damages of $9.00 to $17.00. *Id.* at 859. See also *Borgeson v. Archer–Daniels Midland Co.*, 909 F.Supp. 709, 719 (C.D.Cal.1995) (no aggregation allowed where members of the class had individually purchased corn syrup). Here, plaintiff's class allegations clearly give rise to an inference that each class member indi-

*Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (court looks only to named plaintiff to determine whether there

is complete diversity of citizenship); *Oxford III v. Williams Companies, Inc.*, 137 F.Supp.2d 756, 763 (E.D.Tex.2001).

vidually purchased his or her CD from Morgan Stanley. Consequently, like the claims in *Kanter* and *Borgeson,* the claims here do not derive from common and undivided rights, and cannot be aggregated. Because it is not apparent from the face of the complaint that any plaintiff's individual damages exceed $75,000, and because aggregation of money damages is not appropriate, it does not appear that amount in controversy requirement is met.

### 3. Injunctive Relief

 Morgan Stanley asserts, however, that the amount in controversy requirement is satisfied because of the injunctive relief plaintiff seeks. Plaintiff requests that the court enter an injunction requiring that Morgan Stanley pay interest on future funds deposited by customers during each day of the settlement period.[24] Because this is an indivisible form of relief that will cost far more than $75,000 to implement, Morgan Stanley contends that it satisfies the $75,000 threshold for diversity jurisdiction. Plaintiff contends that it is improper to aggregate the cost of complying with any injunctive order entered in assessing whether the amount in controversy requirement has been met.

"In the context of equitable relief, the Ninth Circuit has held that, 'where the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief.'" *Surber v. Reliance Nat'l Indemnity Co.,* 110 F.Supp.2d 1227 (N.D.Cal.2000) (quoting *Snow v. Ford Motor Co.,* 561 F.2d 787, 789 (9th Cir.1977)). See also *Kanter, supra,* 265 F.3d at 860 ("Under *Snyder* [*v. Harris* ], Pfizer cannot calculate the amount in controversy by aggregating the value of these 'separate and distinct' individual claims. And under *Snow,* Pfizer cannot

evade *Snyder* by recharacterizing what is, in effect, a request for aggregation as an argument for a defendant's-viewpoint approach to calculating the cost of an injunction"); *In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 960 (9th Cir.2001) ("... the consolidated plaintiffs assert the right to accrue rebates under the canceled program. That right is distinct to each plaintiff, is based on his or her individual contractual relationship with Ford and Citibank, and is worth no more than $3,500.... [W] hold that the consolidated plaintiffs in this case have not 'unite[d] to enforce a single title or right in which they have a common and undivided interest.' ... 'The equitable relief sought [in this case] is but a means through which the individual claims may be satisfied,' ... and no plaintiff has an individual claim worth more than $75,000.... The second effort to overcome *Snow* is the argument that ... while the monetary benefit to an individual plaintiff of reinstating the rebate accrual program would be relatively insubstantial, the fixed costs to Ford and Citibank of reinstating and maintaining the program would be the same whether it is done for one plaintiff or for six million.... If the argument were accepted, and the administrative costs of complying with an injunction were permitted to count as the amount in controversy, 'then every case, however trivial, against a large company would cross the threshold.' ... 'It would be an invitation to file state-law nuisance suits in federal court.' Therefore, we hold that the amount in controversy requirement cannot be satisfied by showing that the fixed administrative costs of compliance exceed $75,000").

In the present case, the equitable relief sought will require Morgan Stanley to change its business practices in the future with respect to individual investors. It is

---

**24.** Complaint at 15:22–24; 16:5–7.

a means through which "the right[s] of individual future consumers [will] be protected" (*Snow, supra,* 561 F.2d at 791), and aggregation is, accordingly, inappropriate.

### D. Morgan Stanley's Motion To Dismiss

#### 1. Whether Plaintiff's Claims Must Be Dismissed Because Of SLUSA Preemption

Once it is determined that plaintiff's claims fall within the ambit of SLUSA's removal provision, the complaint must be dismissed, as 15 U.S.C. § 77p(b) states that no covered class action based on state law that alleges misrepresentation or fraud in connection with the sale of a "covered security" can be maintained. See *Gibson, supra,* 2000 WL 777818 at * 3 (Taken together, these provisions authorize the removal and subsequent dismissal of any (1) "covered class action," (2) based on state law, (3) that alleges an "untrue statement or omission of material fact in connection with the purchase or sale" (4) of a "covered security").

 Plaintiff contends that SLUSA does not apply to claims that involve "consumer protection."[25] In *Shaw v. Charles Schwab & Co.,* 128 F.Supp.2d 1270 (C.D.Cal.2001), plaintiffs challenged the commission charged on each securities trade made through defendant's website. The court found that the claim was not preempted by SLUSA, as it concerned the vehicle for delivering the securities traded rather than the securities themselves. *Id.* at 1274 ("The claims relate to the vehicle by which Schwab delivered securities rather than the securities themselves. Plaintiffs have not alleged any misrepresentations or other misfeasance that is intrinsically related to the securities being traded. The Plaintiffs do not allege that

Defendant's fraud induced them to invest in particular securities. Rather, the Plaintiffs contend that Defendant's fraud induced them to select Defendant as their broker rather than some other brokerage firm. It would appear that Plaintiffs' suit lies more in the realm of consumer protection than securities litigation"). This is distinct from the present case, where plaintiff alleges a diminished return on its investment as a result of Morgan Stanley's purported misrepresentations. Similarly, in *Abada v. Charles Schwab & Co.,* 127 F.Supp.2d 1101 (S.D.Cal.2000), the court remanded an action to state court because it found that the misrepresentations allegedly made "had nothing to do with the trading of any particular security, ... did not affect the value of the security [and] merely involved the relationship between Schwab and its customers." The court stated: "Even reading the 'in connection with the purchase or sale of securities' language broadly, any loss suffered by plaintiff was the result of Schwab's technical inability to process an order request, and was not the result of market manipulation or misrepresentations concerning the risk of a particular investment or investment system." *Id.* at 1103. Here, by contrast, the misrepresentations allegedly made concerned the amount of return the Trust was likely to receive on its investment during the settlement period—a key factor of interest in evaluating the investment, and one that falls squarely within the definition of "in connection with the sale or purchase of securities." See *Ambassador Hotel Co. v. Wei–Chuan Construction & Development, Inc.,* 189 F.3d 1017, 1026 (9th Cir.1999) ("According to the case law, then, the fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with

---

**25.** Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl's Opp.") at 4:22–5:3.

similar connection to the securities themselves. While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction").

 Plaintiff also insinuates that SLUSA does not apply to securities brokers, as opposed to public companies issuing stock.[26] The statute contains no such exception, and plaintiff has cited no authority in support of its argument. SLUSA has, in fact, been applied in suits against a number of securities brokers. See, e.g., *McCullagh v. Merrill Lynch & Co.,* No. 01 Civ. 7322(DAB), 2002 WL 362774, * 4 (S.D.N.Y. Mar. 6, 2002) (Slip Op.) (denying a motion to remand and dismissing claims against a securities broker pursuant to SLUSA); *Korsinsky v. Salomon Smith Barney, Inc.,* No. 01 Civ. 6085(SWK), 2002 WL 27775, * 6 (S.D.N.Y. Jan. 10, 2002) (finding that a case fell within SLUSA and was subject to dismissal as a consequence); *Riley v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 168 F.Supp.2d 1352, 1355–57 (M.D.Fla.2001) (holding that SLUSA preempted Florida state law claims against a brokerage firm). Despite language in the legislative history regarding public companies, the text of the statute makes abundantly clear that it applies to the purchase and sale of all "covered securities," and does not require that the purchase or sale be directly to or from the issuing company.

Because the court finds that plaintiff's state law securities fraud claims are preempted by SLUSA, it dismisses the complaint. Plaintiff has twenty days to file an amended complaint asserting claims that may be maintained under the federal securities laws.

**26.** Pl's Opp. at 5:4–6:8.

## III. CONCLUSION

For the reasons stated, the court denies plaintiff's motion to remand, denies plaintiff's motion to strike the Farahdel declaration, and grants Morgan Stanley's motion to dismiss the complaint. Plaintiff is granted leave to file an amended complaint alleging claims that may be maintained under the federal securities laws within twenty days from the date of this order.